HALL, Chief Judge.
The plaintiff-bank filed suit against the defendant-insurance company seeking recovery of the proceeds allegedly due under an insurance policy issued by defendant which provided protection against loss to the insured's mortgagee interest in mortgaged property when such loss occurs through error or accidental omission on the part of the insured in the operation of the *454 insured’s customary procedure in requiring, procuring and maintaining hazard insurance policies payable to the insured as mortgagee. The bank’s loss occurred when a mobile home mortgaged to the bank was destroyed by fire shortly after the hazard insurance policy covering the mobile home had lapsed. The insurance company’s defense was grounded on the contention that the loss was not covered under the terms of the errors and omissions policy as the loss resulted from following a customary procedure which was inherently defective in nature as opposed to resulting from an error in the operation of plaintiff’s customary procedure and further that the plaintiff-bank had no customary procedure for replacing lapsed policies. After trial, the district court found that coverage existed and judgment was rendered in favor of the plaintiff in the amount of $40,375.24, the pay-off balance on the note secured by the mortgage on the mobile home.
SPECIFICATION OF ERRORS
Defendant appealed asserting the following specifications of error:
1. The trial court erred in finding that the policy covered the creation of a defective procedure as opposed to covering errors or omissions in the operation of that customary procedure;
2. The trial court erred in finding that the policy language in question was ambiguous;
3. The trial court erred in finding that the plaintiff would have procured insurance had it learned of the cancellation; and
4. The trial court erred in awarding the full amount of the note without any competent evidence as to the value of the mobile home.
For the reasons set forth in this opinion, we affirm the judgment of the district court.
FACTUAL BACKGROUND
In May, 1982, the bank purchased from the vendor of the mobile home a promissory note executed by James E. Thornton dated May 26, 1982 in the amount of $82,-323.36, which note was secured by a chattel mortgage on the mobile home. Thornton obtained a comprehensive hazard insurance policy on the mobile home in the amount of $54,000.00, which policy named the bank as lienholder and provided mortgagee protection.
On April 25, 1983, Thornton was sent an expiration notice informing him that the insurance would expire on May 25, 1983 and a copy of this expiration notice also was sent to the plaintiff-bank. The bank employee who received the copy of the notice did not report receipt of the notice to a bank officer and there was no established procedure for the employee to take any particular action upon receipt of such a notice.
The hazard insurance policy lapsed on May 25, 1983 and the mobile home was totally destroyed by fire shortly thereafter on May 28, 1983. The mortgagor had previously filed a petition in bankruptcy and had been discharged from personal liability on the note held by the bank.
It was established at trial that plaintiff maintained a customary procedure in an effort to make certain that borrowers maintained insurance on mortgaged property. On the last business day of each month, a computer print-out report would be generated reflecting those insurance policies which had already expired and those policies which were scheduled to expire within the next fifteen days. A report was issued on April 29, 1983 but it did not indicate that the policy on the Thornton mobile home was about to expire because the scheduled policy expiration date was more than fifteen days from the date of the report. At the time of the next report at the end of May, 1983, the insurance policy had lapsed and the mobile home had been destroyed by fire.
It was established by the testimony of a vice-president of the bank that it was the policy of the bank to require hazard insurance on mortgaged property and for the bank to obtain insurance when borrowers allowed their policies to expire and that a *455 policy would have been procured in this case if a loan officer had been aware that the policy had lapsed.
The pertinent portion of the errors and omissions policy in effect at the time of the loss provides as follows:
A. COVERAGE — MORTGAGEE INTEREST: Subject to the limit of liability specified above, this Company agrees to indemnify the Insured for loss to the Insured’s mortgagee interest (including the Insured’s mortgagee interest in any legal fiduciary capacity) in real property and in personal property mortgaged in connection therewith, when such loss occurs through error or accidental omission on the part of the Insured (or those representing the Insured) in the operation of the Insured’s customary procedure in requiring, procuring and maintaining valid policies or other evidences of insurance against the perils described below,
(1) payable to itself as mortgagee, and
(2) on such property during and after foreclosure by the Insured or when sold under a conditional sales agreement or other instrument whereby title remains with the Insured;
if, by reason of such error or accidental omission, requisite insurance is not in force at the time of loss.
INSURANCE COVERAGE
Defendant’s first three specifications of error are directed at the trial court’s finding that the insurance policy provided coverage of the loss. The trial court found that the plaintiff was entitled to recover under the policy for the loss of its mortgagee interest in the mobile home. The court noted that both parties agreed that there was an error in the internal notice procedure in that a two week “gap” was created in which no notice would be received before an insurance policy expired. Although the defendant argued that there was no error on the part of insured as required under the policy and characterized the error in the instant case as purely procedural in nature resulting from following a defective internal notice procedure, the court found that the act of following an erroneous procedure constituted an error in and of itself. Further, the position of the defendant overlooked the fact that the development and adoption of an erroneous procedure is actually an employee error as such procedures are developed by employees.
The court held that the phrase “in the operation of the Insured’s customary procedure” was ambiguous and subject to different interpretations. The court held that the evidence amply showed that it was plaintiff's customary procedure to require, procure and maintain the requisite insurance on its collateral. However, plaintiff negligently failed to maintain insurance in the instant case despite the receipt of a cancellation notice from the insurer. The court characterized this error as either a failure or omission on the part of plaintiff’s personnel in not requiring that cancellation notices be given to the appropriate bank officer or a failure on the part of the clerk receiving the expiration notice to alert an appropriate officer, or both.- Thus, the resulting loss of plaintiff’s mortgagee interest occurred through error on the part of the insured in the operation of plaintiff’s customary procedure in requiring, procuring and maintaining valid insurance policies on their collateral. Due to these errors, the requisite insurance was not in force at the time of the loss. The court held that the policy was written to precisely cover this type of loss and construing ambiguities against the insurer, the policy could be reasonably interpreted to afford coverage.
On appeal, defendant contends that the plaintiff’s loss is excluded from coverage under the terms of the errors and omissions policy as the loss resulted from following a customary procedure which was inherently defective in nature as opposed to resulting from an error in the operation of plaintiff’s customary procedure. In other words, no error per se was in fact committed but rather the customary procedure was followed in the instant case by plaintiff-bank. Thus, the loss resulted from a defect in the procedure itself and not from an error in the execution of that procedure.
*456 It is well-settled that the rules which govern the interpretation of written agreements also apply to contracts of insurance. The terms and the provisions of insurance contracts, as with other written agreements, are to be construed in their general and popular meaning. Martin v. Phillips, 356 So.2d 1016 (La.App. 1st Cir.1977) and citations therein. See also Carney v. American Fire & Indem. Co., 371 So.2d 815 (La.1979). In interpreting insurance policies, the principal consideration is to ascertain the intention of the parties from the language of the contracts. The agreements have the effect of laws on the parties where they have been legally entered into. Graves v. Traders & General Insurance Company, 214 So.2d 116 (La.1968) and citations therein. Ambiguities in an insurance contract will be construed against the insurer and in favor of the insured. Martin v. Phillips, supra. See also Carney v. American Fire & Indem. Co., supra, Rodriguez v. Northwestern Nat. Ins. Co., 358 So.2d 1237 (La.1978), 70th St. Food Store v. Northeastern Fire Ins., 408 So.2d 958 (La.App. 2d Cir.1981) and Rambin v. Continental Casualty Company, 186 So.2d 861 (La.App. 2d Cir.1966), writ refused, 249 La. 578, 187 So.2d 740 (1966). To be found ambiguous, the policy must be susceptible of two or more interpretations which are equally reasonable. Elmer v. Washington National Insurance Company, 308 So.2d 312 (La.App. 3d Cir.1975), writ denied, 312 So.2d 340 (La.1975). When the terms of an insurance contract are clear and express, the contract shall be enforced between the parties according to its provisions as the contract constitutes the law between those parties. The insurance contract must be interpreted as a whole and all terms and provisions of the policy must be construed together to ascertain the true intent of the parties. Martin v. Phillips, supra and citations therein. See also Carney v. American Fire & Indem. Co., supra.
The trial court was correct in finding that the loss was covered under the terms of the errors and omissions policy in this case.
The pertinent policy provision, noted earlier, specifically provides that defendant shall indemnify the insured for losses which occur through the error or accidental omission on the part of the insured “... in the operation of the Insured’s customary procedure in requiring, procuring and maintaining valid policies or other evidences of insurance ... if, by reason of such error or accidental omission, requisite insurance is not in force at the time of loss.” (emphasis added)
As used in this context, the term “operation” could reasonably be susceptible of two interpretations. Defendant argues that the term “operation,” as used in the policy, means only the actual manner in which such customary procedures are executed by the insured. Thus, without an error in the execution of the customary procedure, there could be no coverage under the provisions of the policy. While this is a reasonable interpretation of the terms of the policy, it is not the only possible reasonable interpretation.
As found by the trial court, the term “operation,” as used in the policy, could mean the manner in which that customary procedure actually operates. Under this interpretation, there would be coverage under the policy if the loss of the insured occurs as a result of an error or omission inherent in the manner in which the customary procedures normally operate.
The evidence at trial established that plaintiffs customary procedure was defective in that there was an approximate two week gap in the computer print-out procedure designed to call attention to expiring and expired policies. Further, there was a failure to instruct and require the clerk who received the insurance expiration notices to notify the appropriate bank officer of the scheduled expiration date of a policy, particularly if the policy was scheduled to expire within this two week period. These deficiencies constitute errors in the normal operation of the plaintiffs customary procedure.
*457 The computer print-out system was not in and of and by itself the bank’s “customary procedure,” but rather was only one step in the bank’s customary procedure of requiring, procuring, and maintaining insurance on mortgaged property. The customary procedure necessarily involved multiple actions by bank employees in setting up the system, instructing other employees, receiving, examining, and filing policies and notices, reviewing the computer print-out, contacting customers concerning expiration of policies, purchasing policies to replace expired policies, and other functions. Most all of these functions require action and judgment decisions by bank employees. The loss in this case was occasioned by errors and omissions on the part of the bank employees in the operation of the bank’s customary procedure of requiring, procuring, and maintaining insurance.
As noted earlier, the policy must be susceptible of two or more reasonable interpretations to be found ambiguous and if ambiguous, ambiguities in an insurance contract will be construed against the insurer and in favor of the insured.
As the language of the policy in the instant case is susceptible of two reasonable interpretations, the policy is ambiguous. The ambiguity must be construed in favor of coverage. Further, although both interpretations are reasonable, the interpretation urged by the defendant is narrow and somewhat strained and the interpretation urged by plaintiff is the more reasonable. Construing these ambiguities in favor of the insured, the plaintiff’s loss is covered under the provisions of the policy.
Defendant argues that the trial court erred in finding that the plaintiff would have procured insurance on the mobile home had it learned of the cancellation. This argument is without merit.
The primary purpose behind the establishment of plaintiff’s customary procedure was to maintain valid insurance on its collateral. Implicit in the maintenance of such a procedure is the intent of the plaintiff-bank to secure insurance on the collateral if the borrower allowed the insurance to lapse. Additionally, the vice-president of the plaintiff-bank testified that insurance would have been procured had the bank received timely notification. This testimony is uncontradicted in the record.
AMOUNT OF RECOVERY
The defendant’s final specification of error is that the trial court erred in awarding the full amount of the note without any competent evidence as to the value of the mobile home.
The defendant does not point to any provision of the errors and omissions policy which specifically limits the plaintiff’s recovery to the value of the mobile home. Plaintiff established its loss in the amount of its mortgage interest, being the pay-off balance on the note in the amount of $40,-375.24. If the value of the mobile home is a factor to be considered in determining the amount due under the policy, there was sufficient evidence presented at trial as to the value of the mobile home at the time the loss was incurred. There was testimony that the mobile home originally sold for $51,000.00 and was approximately one year old at the time of the fire. The bank officer also testified that in his opinion the value of the mobile home exceeded the loan balance. Defendant presented no evidence to the contrary.
DECREE
For the reasons assigned, the judgment of the district court in favor of plaintiff, American Bank and Trust Company in Monroe, and against defendant, Continental Casualty Company, is affirmed at defendant’s cost.
AFFIRMED.