United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 28, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**NO. 03-30831**

_____

**SANFORD H. SHOCKLEE and MARILYN SHOCKLEE,
individually and on behalf of all others similarly situated,**

**Plaintiffs-Appellants,**

**versus**

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court
for the Middle District of Louisiana
3:00-CV-279**

_____

Before JOLLY, JONES and BARKSDALE, Circuit Judges.

PER CURIAM:

This case arises out of a "vanishing premiums" insurance policy where the premiums never actually vanished. The insurance policy at issue in this case is unambiguous on its face, and the plaintiffs' claims fail as a matter of Louisiana law. Therefore, the judgment of the district court dismissing the case is **AFFIRMED**.

## I. BACKGROUND

In 1985, an agent for the company now known as Massachusetts Mutual Life Insurance Company ("MassMutual")[1] persuaded Sanford and Marilyn Shocklee to purchase a $25,000 whole life insurance policy. In the course of selling the policy, the agent provided the Shocklees with a printed illustration that showed that if MassMutual's then-current dividend payments continued and the dividends were reinvested, the Shocklees might be able to use the accumulated dividends to pay the policy premiums after seven years. A variety of disclosures accompanying the illustration indicated, however, that the policy premiums were "payable for life," and the forecast dividend payments were "neither guarantees nor estimates for the future." The Shocklees were issued a policy on June 20, 1985. Sometime thereafter they received a copy of the actual policy, which afforded them ten days to review the policy and cancel it at their option. The Shocklees did not cancel the policy and instead began making annual premium payments. For seven years, the Shocklees made the scheduled premium payments, reinvested the policy dividends and received annual statements indicating the amount of the dividend payments being reinvested. After receiving an eighth premium bill in 1992, the Shocklees made at least one additional payment on the policy.

---

[1]     Connecticut Mutual Life Insurance Company, the original insurer that issued the policy at issue in this case, merged with MassMutual in 1996.

In March 2000, the Shocklees filed a class action in federal court in Louisiana asserting that MassMutual had breached its contract by failing to "vanish" their premium payments after seven years. The complaint was later amended to add a breach of the implied duty of good faith and fair dealing. The district court initially denied MassMutual's motion to dismiss, which the court converted, sua sponte, into a motion for summary judgment. The district court denied summary judgment based on its view that the Shocklees' insurance policy was ambiguous as to the source of the premium payments. Following discovery, the district court addressed cross-motions for summary judgment and, relying in part on statements made by the Shocklees during their depositions, granted summary judgment in favor of MassMutual. The Shocklees now appeal.

## II. DISCUSSION

### A. Standard of Review

A district court's grant of summary judgment is reviewed de novo. Hodges v. Delta Airlines, Inc., 44 F.3d 334, 335 (5th Cir. 1995) (en banc). Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); see also FED. R. CIV. P. 56(c). In reviewing a district court's grant

3

of summary judgment, the court of appeals may affirm on grounds raised in the trial court but different than those relied upon by the district court. Doctor's Hosp. v. S.E. Med. Alliance, 123 F.3d 301, 307 (5th Cir. 1997).

**B. Shocklees' Claim of Contractual Ambiguity**

As noted above, the district court initially determined that the insurance contract was ambiguous as to the source of the premium payments. We review this determination de novo under the same standard that guided the district court. Am. Totalisator Co. v. Fair Grounds Corp., 3 F.3d 810, 813 (5th Cir. 1993) (noting that the district court's "determination of whether the contract is ambiguous," as well as its interpretation of the contract is to be reviewed de novo). The parties agree that Louisiana law governs this action. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd results, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046 (West 1987). As a result, if a contract is unambiguous on its face, "the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." Am. Totalisator Co., 3 F.3d at 813. Under Louisiana law, a contract is ambiguous when the contract is "uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established

4

rules of construction." In re Liljeberg Enters., 304 F.3d 410, 440 (5th Cir. 2000) (internal quotation marks and citations omitted). Importantly, Louisiana law "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1326 (5th Cir. 1994).

In a recent case, the Eighth Circuit examined similar "vanishing premiums" insurance policies under Louisiana law. See In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 836-37 (8th Cir. 2003).[2] The policies at issue in Minnesota Mutual are identical in all material respects to the policy at issue here. First, both sets of policies contain an explicit merger and integration clause. Id. at 837. The MassMutual policy provides that "[t]he policy and the application constitute the entire contract" and that the insurance company's "agents cannot alter or modify any of the terms of the policy . . . [nor] waive any of its provisions." Second, both sets of policies state that a premium is due annually. Id. Indeed, both the cover page and the benefits and premiums section of the Shocklees' policy explicitly so indicate. Third, the allegations made by the

---

[2] The plaintiffs' opening brief failed even to mention Minnesota Mutual although the Shocklees' counsel also represented the plaintiffs in Minnesota Mutual and the opinion in that case was issued nine days before the plaintiffs filed their brief in this court. Such behavior is inexcusable despite the attorney's assertion at oral argument that he did not cite this other case because he was planning to or had filed a motion for reconsideration with the Eighth Circuit.

<u>Minnesota Mutual</u> plaintiffs are nearly identical to those made by the MassMutual plaintiffs - that insurance agents using sales illustrations represented that the policy premiums would vanish after seven years. <u>Id</u>. at 832-33. Finally, in <u>Minnesota Mutual</u>, the Eighth Circuit faced the same claims for breach of contract and breach of the duty of good faith and fair dealing under Louisiana law that confront this court. <u>Id</u>. at 836. As a result, the plaintiffs' attempt to distinguish <u>Minnesota Mutual</u> from this case is without merit.[3]

The Eighth Circuit held that the <u>Minnesota Mutual</u> plaintiffs' contract claims failed on the merits because the policies were unambiguous as to the source of the premiums. The <u>Minnesota Mutual</u> court noted that "[n]othing in the policies themselves suggests that the source of the premiums [was] to be anything other than the insured's own funds" and that "[t]he policies [did] not specifically state the source of the premium payments due in the first seven years when the Appellants admit to being responsible for payment." <u>Id</u>. As a result, the Eighth

---

[3] The plaintiffs argue that <u>Minnesota Mutual</u> is "readily distinguishable" because that case "dealt with a different insurance company, different sales illustrations and different policies." A first-year law student could point out the fallacy of such a distinction. Courts regularly apply the legal principles contained in analogous cases to new factual scenarios. In this case, however, we need not even draw on analogical reasoning because the material facts in the two cases are virtually identical. In such a situation, we often look to sister circuits for guidance on how to approach similar claims. The plaintiffs also argue that <u>Minnesota Mutual</u> "never addressed the claim for breach of the implied duty of good faith and fair dealing, so it is of little use on that point." To the contrary, the <u>Minnesota Mutual</u> court held that <u>all</u> of the plaintiffs' contract claims were unsustainable in the absence of contractual ambiguity. <u>See</u> <u>Minnesota Mutual</u>, 346 F.3d at 836-38 (consistently referring to the viability of the plaintiffs' contractual "claims" as a whole).

Circuit declined to find ambiguity in the policies simply because "they failed to specify the source of the premium payments in the following years." <u>Id</u>.

The Eighth Circuit's analysis is persuasive. Courts should not strain to find an ambiguity in an insurance policy when none exists. Indeed, Louisiana law discourages such an effort. <u>See</u> LA. CIV. CODE ANN. art. 2046; <u>Succession of Fannaly v. Lafayette Ins. Co.</u>, 805 So. 2d 1134, 1138 (La. 2002) (noting that Louisiana's "rules of contractual interpretation 'do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists'") (quoting <u>Peterson v. Schimek</u>, 729 So. 2d 1024, 1029 (La. 1999)); <u>Bergeron v. Pan Am. Assurance Co.</u>, 731 So.2d 1037, 1043 (La. Ct. App. 1999) ("An insurance contract . . . should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by the unambiguous terms").

The district court, in initially holding that the policy was ambiguous as to the source of the premium payments, appears to have been unduly influenced by the plaintiffs' allegations regarding representations made by the MassMutual sales agent. The policy on its face, however, evinces no ambiguity as to where the payments will come from; as with most individually-purchased life insurance policies, the insured is responsible for paying the premiums. Indeed, the Shocklees do not dispute that they were

7

required to make payments for the first seven years of the policy and, as in <u>Minnesota Mutual</u>, nothing within the four corners of the contract suggests that payments would come from any other source in the following years. In the absence of any ambiguity on the face of the contract, Louisiana law bars this court from examining extrinsic evidence. <u>Id</u>. Without the extrinsic evidence regarding the sales illustrations, the plaintiffs are unable to support either of their theories of recovery. That is, without being able to demonstrate that their policy contained a promise to "vanish premiums," the Shocklees cannot maintain claims for breach of contract or breach of the implied duty of good faith and fair dealing with regard to such a promise. Therefore, the Shocklees' claim fails as a matter of law and summary judgment in favor of MassMutual was proper.[4]

### III. CONCLUSION

For the reasons discussed above, the judgment of the district court is **AFFIRMED**.

---

[4] The parties also discuss the potential prescription of the Shocklees' breach of contract claim under Louisiana law. However, because we find that the Shocklees have no cognizable legal claims under Louisiana law, we need not reach this issue.

8