IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-30740

TIG INSURANCE COMPANY, as successor to International
Surplus Lines Insurance Company; ET AL

                                        Plaintiffs

v.

EAGLE INC

                                        Defendant - Appellee

v.

GRAY INSURANCE COMPANY

                                        Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
(05-CV-179)

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this insurance case, we are presented with a contract interpretation issue regarding an excess insurance policy. The excess insurance policy covers the Appellee-Insured Eagle, Inc. ("Eagle") on claims beyond the limits of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

insured's underlying insurance policies. The contract interpretation question presented is whether the Appellant-Insurer Gray Insurance Company ("Gray") is obligated under the policy to pay "up-front" the covered claims and defense costs or "pay-back" those covered claims and defense costs. The district court consulted external documents in interpreting the policy and determined that it was ambiguous. Based on this finding of ambiguity, the district court applied a presumption in favor of the insured and determined that the policy obligated the insurer to pay "up-front" the covered claims and defense costs. We disagree. We find no ambiguity in the policy and agree with the appellant that the policy unambiguously requires the appellant only to reimburse or "pay-back" paid claims and defense costs. Accordingly, we REVERSE the district court's grant of summary judgment in favor of Eagle, REVERSE the district court's partial denial of Gray's motion for summary judgment, and RENDER judgment in Gray's favor.

## BACKGROUND

Appellee-insured Eagle holds two insurance policies relevant to this case. Plaintiff TIG Insurance Company ("TIG") provided Eagle with a general liability insurance policy labeled "XSI-9538," which provides coverage up to a certain limit. Additionally, Appellant-Insurer Gray provided Eagle with an excess insurance contract ("Gray policy") termed an "aggregate excess reimbursement" policy. Gray and Eagle designed the Gray policy to insure Eagle against loss incurred by claims (and the defense of claims) that exceeded the limits of Eagle's underlying insurance policies, including XSI-9538.

On January 21, 2005, TIG filed an action against Eagle and Gray seeking a declaratory judgment as to the extent of its obligations under its policies. Eagle answered and filed counter-claims against TIG and Gray alleging that numerous lawsuits were filed against it and that TIG and Gray were obligated

2

to defend those lawsuits under their policies. The only claims relevant to this appeal are Eagle's counter-claims against Gray, which calls for an interpretation of Gray's payment obligations under its excess insurance policy.

Thus, the district court was called upon to decide the issue, which it described as:

> [W]hether [under the Gray policy,] Gray is obligated to pay "up front" for claims asserted against Eagle, and for Eagle's defense costs (attorney's fees and expenses), or, instead, whether Gray must only "pay back" Eagle for any of these amounts after Eagle provides proof that it actually has already paid them.

Before the district court, Gray argued that the Gray policy only obligates the insurer to "pay back" or reimburse Eagle while Eagle argued that the Gray policy obligates the insurer to pay "up front" claims and defense costs. Relying on their contrasting interpretations, both Gray and Eagle filed motions for summary judgment.

In deciding the issue, the district court first found the Gray policy language ambiguous as to whether the policy obligated the insurer to "pay back" or pay "up-front" claims and defense costs. Even though the Gray policy was termed a "reimbursement" policy and used the term "reimbursement" when describing the insurer's payment obligations, the district court found ambiguity. Relying on the relationship between XSI-9538 and the Gray policy[1] and a reading of the Gray policy's incorporation provision, which incorporated the "Exclusions" and "Conditions" of the underlying policies, the district court concluded that the Gray policy also incorporated, or must be read in conjunction with provisions in XSI-9538's "Coverage" section, which requires the insurer to

---

[1] Gray is XSI-9538's excess insurance policy.

pay claims and defense costs up-front.[2]  Therefore, the district court concluded that one could reasonably read the Gray policy as similarly requiring Gray to pay claims and defense costs up-front.  After finding an ambiguity, the district court applied Louisiana law's presumption against the insurer and for coverage. Accordingly, the district court ruled for Eagle in summary judgment.  The district court therefore partially denied Gray's motion of summary judgment as to the issue at question in this case.[3] On the basis of the summary judgment decision, which resolved the dispositive legal issues in the case, the district court entered final judgment for Eagle.  Gray now timely appeals the district court's summary judgment decision.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court.  Millennium Petrochems., Inc. v. Brown & Root Holdings, Inc., 390 F.3d 336, 339 (5th Cir. 2004). Summary judgment "should be rendered if the pleadings, the discovery and disclosure

---

[2] Policy XSI-9538 is composed of one generic insuring agreement with only an "Exclusions" but no "Conditions" section and several attached endorsements with sections that are labeled specifically as "Exclusions" and "Conditions."  The underlying policy's insuring agreement has a generic "Coverage" section that provides Eagle with general liability insurance and imposes on the insurer a duty to defend:

> The [insurer] company shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury . . . .

Under these terms, the insurer is obligated to pay up-front any covered claims "on behalf of the insured" and has a duty to defend, i.e., pay up-front and be responsible for the defense of claims.

[3] The district court granted Gray summary judgment on "bad faith" claims that are not part of this appeal.

4

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The only issue presented is a matter of contract interpretation, which is an issue of law under Louisiana law. See Gebreyesus v. F.C. Schaffer & Associates, Inc., 204 F.3d 639, 642 (5th Cir. 2000). "Contract interpretation, including the question of whether a contract is ambiguous, is a question of law subject to de novo review." Millennium Petrochems., 390 F.3d at 339.

## ANALYSIS

Louisiana law applies in this case because the insurance policy was issued in Louisiana for a Louisiana corporation. See In re Katrina Canal Breaches Litig. 495 F.3d 191, 206 (5th Cir. 2007). Under Louisiana law, the rules of interpretation for insurance contracts are as follows:

> An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.

Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La. 1994) (citations omitted).

The district court found the contract language ambiguous and then relied on external documents and legal presumptions to construe the contract language

in favor of Eagle. In accordance with Louisiana law, we must first determine whether an ambiguity exists before relying on legal presumptions and external sources to construe the policy. See Sher v. Lafayette Ins. Co., 988 So.2d 186, 193-95 (La. 2008); Shocklee v. Mass. Mut. Life Ins. Co., 369 F.3d 437, 441 (5th Cir. 2004) (rejecting the use of the company's representations to discern an ambiguity when construing the four corners of an insurance policy) (interpreting Louisiana law). When a provision is subject to two reasonable interpretations, it is ambiguous. See, e.g., Am. Bank and Trust Co. v. Continental Cas. Co., 476 So.2d 453, 457 (La. Ct. App. 1985). For the following reasons, we agree with Gray that the Gray policy is clear and unambiguous and does not provide coverage as Eagle contends.

## A. The Gray Policy Is Clear and Unambiguous

The policy's plain language is clear and unambiguous. The Gray policy's "Coverage" section plainly limits Gray's payment obligations to "aggregate reimbursements to the insured." The first provision in the Gray policy's "Coverage" section states:

> To pay promptly when due aggregate reimbursements to the insured that are excess of the aggregate limit of the underlying policies scheduled in the Declarations.

This provision plainly means Gray is only responsible for "reimbursing" or "paying back" Eagle, the insured. The dictionary defines "reimbursement" as "repayment" or "indemnification." BLACK'S LAW DICTIONARY 1312 (8th ed. 2004); see, e.g., Cottle v. Conagra Poultry Co., 954 So.2d 255, 259 (La. Ct. App. 2007) (using this definition to interpret a contract and concluding that "reimbursement requires one to put forth something in order to be paid something back."). Therefore, by operation of the phrase "reimbursement to the insured," Gray is only obligated, under the plain language of the policy, to repay Eagle after Eagle

pays a claim or defense expense, i.e., "discharges a liability," that is beyond the limits of the underlying policy.[4] Accord Grefer v. Travelers Ins. Co., 919 So.2d 758, 764 (La. Ct. App. 2005) (interpreting a similar Gray policy). In respect to the issue presented, we agree with Gray that the policy is unambiguous.

B. The Incorporation Provision Does Not Render the Policy Ambiguous

In response, Eagle, relying on the district court's reading of the policy, contends that the "reimbursement" provision must be ambiguous, because, as the district court concluded, "when considered together with the underlying [policies] . . . [they] create ambiguity regarding the intended nature and scope of Gray's payment obligations under its policy." According to Eagle, the policy is ambiguous because while the Gray policy has "reimbursement" language, the underlying policy in its "Coverage" section obligates insurers to pay "up-front."

To justify reading the Gray policy in conjunction with the entire underlying policy, Eagle and the district court point to the Gray policy provision that incorporates the "Conditions and Exclusions" sections of the underlying policy. The district court stated: "[A]s a starting point, the [underlying policy's] coverage and defense language must be considered in conjunction with the Gray policy's 'Insuring Agreements' and 'Coverage' provisions set forth above, as well as Gray policy's statement that it, 'except as to limits, shall be subject to all the Exclusions and Conditions of the underlying policies.'" However, this reading contravenes the plain language of the incorporation provision and is therefore unreasonable.

---

[4] A Gray policy provision in the "Conditions" section describes the need to exhaust the underlying policy's limits before payment is due:

> No payment shall be due under [the "Coverage" section] of this policy until the aggregate limit of the underlying policies has been exhausted by the payment of claims.

The relevant Gray policy provision states:

This policy, except as to limits, shall be subject to all the Exclusions and Conditions of the underlying policies.

According to the district court and Eagle, this provision, in effect, incorporates the entire underlying policy, including its "Coverage" provision, which obligates the insurer to pay claimants directly "on behalf" of Eagle and imposes upon the insurer a duty to defend. Such a reading is inconsistent with the policy language. The incorporation provision plainly states that the Gray policy only incorporates the "Conditions" and "Exclusions" sections of the underlying policy and it does not refer to the "Coverage" section of the underlying policy. First, the incorporation provision specifically refers only to "Conditions" and "Exclusions," and capitalizes both terms. See Garrell v. Good Citizens Mut. Ben. Ass'n, 16 So.2d 463, 466 (La. 1943) (noting that capitalization signals an intent to refer to a specific provision or clause). Second, the Gray policy itself clearly differentiates between its "Coverage" section and its "Conditions" and "Exclusions" sections. Reading the Gray policy as a whole, the incorporation provision also differentiates between these types of sections; it incorporates only the "Conditions" and "Exclusions" sections on the one hand and does not incorporate "Coverage" sections on the other. See LA. CIVIL CODE ART. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."). Accordingly, the incorporation provision is plainly limited to the incorporation of only the "Conditions" and "Exclusions" sections of the underlying policy.

Thus, because the incorporation provision does not include the "Coverage" section, the district court erred as a matter of Louisiana law in incorporating the "Coverage" section and finding ambiguity. Apart from the Gray policy's incorporation provision, Eagle and the district court provide no other textual or

8

legal basis to read the Gray policy in conjunction with the entire underlying policy in order to find an ambiguity. Any assumption, without a textual basis, that a policy incorporates another contract or should be read in reference to another contract contravenes Louisiana law. Louisiana law only recognizes the incorporation of other contracts if the contract in question specifically refers to other contracts in writing. See La. Revised Statutes § 22:628 ("No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance."). Without a specific reference to the wholesale incorporation of the underlying policy in the Gray policy's text, one cannot incorporate de facto or use the entire underlying policy to interpret the Gray policy so as to create an ambiguity in the policy. See La. Civil Code Art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); Sher, 988 So.2d at 193-95; Shocklee, 369 F.3d at 441. Because the district court consulted the whole underlying policy and specifically its "Coverage" section to find an ambiguity without any specific incorporation of the underlying policy or the "Coverage" section, it erred under Louisiana's rules for contract interpretation. As a result, it committed further error by effectively ignoring the import of the contract's plain and unambiguous use of the word "reimbursement" when defining payment obligations before consulting external sources to create an ambiguity. See La. Civil Code Art. 2047 ("The words of a contract must be given their generally prevailing meaning."). For the same reasons, the district court's conclusion that a duty to defend found in the underlying policy can apply by default to the Gray policy (without specific

9

incorporation or any textual basis) simply because the Gray policy does not expressly exclude a duty to defend is contrary to Louisiana law.

In sum, we do not find any ambiguity in the incorporation provision. See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 770 (La. 1994); Gulf Fleet Marine Operations, Inc. v. Wartsila Power, Inc., 797 F.2d 257, 261 (5th Cir. 1986); Am. Bank and Trust Co. v. Cont'l Cas. Co., 476 So.2d 453, 457 (La. Ct. App. 1985). We reject Eagle's attempt to create ambiguity in the text by referencing, contrary to Louisiana law, sections in the underlying policy not specifically incorporated into the Gray policy.

## C. No Other Provision Renders the Policy Ambiguous

The district court also suggested that condition (7), which appears in the "Conditions" section of the underlying policy,[5] supports an interpretation of the Gray policy that would obligate Gray to pay up-front all covered claims and defense expenses that exceed the limits of the underlying policy. Again, based on the plain language of the policy, we find this argument unavailing.

Condition (7) states:

> When it has been determined that the Company is liable under Limits of Liability (B) of this Policy, the Company will, thereafter promptly reimburse the Assured, (or, when the Assured is legally obligated to pay or by final judgment has been adjudged to pay any person or persons as damages, the Company shall pay on behalf of the Assured) for all sums upon receipt of a monthly or quarterly statement from Gray & Company, Inc., . . . .

The referenced provision, "Limits of Liability" (B), is in another part of the underlying policy and it states that:

> <u>Amount of limit</u>: . . . In respect of up to $35,000 ultimate net loss in respect

---

[5] Gray does not dispute that condition (7) is incorporated into the Gray policy by virtue of the incorporation provision, but Gray disagrees with the district court's (and Eagle's) reading of condition (7).

10

to each and every accident . . . .

(emphasis added).  Further, "ultimate net loss" is defined by the underlying policy to include loss associated with covered claims and defense expenses:

> Under Limits of Liability (B), the words "Ultimate Net Loss" shall be understood to mean the sums paid in settlement of losses for which the Assured is liable . . . and shall include allocated legal fees and expenses including legal expenses in connection with litigation . . . .

Reading all of these pertinent provisions together, condition (7) plainly allows Gray to reimburse "ultimate net loss" only after Eagle or a third party has already paid the sums, including defense costs, in settlement of claims.  Reading this provision in conjunction with the fact that Gray policy's "Coverage" section only uses "reimbursement" language, the contract as a whole plainly provides that Gray is only obligated to reimburse or "pay back" Eagle after Eagle or a third party has already paid a claim or defense costs.  See LA. CIVIL CODE ART. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.").

Finally, the district court highlights the fact that the claims handling provision in the Gray policy requires Gray to provide specified assistance to the attorney handling the claim for the underlying insurer.[6]  However, this provision neither authorizes nor requires Gray to hire, supervise or compensate that attorney, all of which further makes clear that Gray is not obligated to act as a liability insurer for Eagle in respect to claims covered by the underlying policy.  Because this provision does not specifically discuss Gray's payment obligations,

---

[6] The relevant provision in the Gray policy states that Gray shall:

> Investigate all claims arising under this policy and the underlying policies and secure witnesses thereof and endeavor to secure all available information pertaining to such claims for the use of the Attorney in the adjustment of any such claim and for the information, study and use of the Safety Engineers in reduction of accident hazards.

11

this provision cannot render the specific "reimbursement" language in the Gray policy ambiguous.

## CONCLUSION

We agree with Gray that, in respect to the issue in this case, the words of the Gray policy are clear and unambiguous and lead to no absurd consequences; that under the plain meaning of those words, the Gray policy is a "pay-back" or reimbursement policy, not a liability policy; and that under its policy Gray is only required to reimburse Eagle for claims and expenses paid by Eagle or for it by a third party. See LA. CIVIL CODE Art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). The district court, however, made further interpretation of the contract and found ambiguity by reading the policy in conjunction with extraneous documents. This approach contravenes Louisiana rules for contract interpretation, which provide that no further interpretation may be made if the contract clearly and unambiguously resolves the issue presented without absurd consequences. Id. Other provisions of the Gray policy cited by the district court also do not provide a contrasting reasonable reading of the policy so as to render the policy ambiguous. We now REVERSE the district court's grant of summary judgment in favor of appellee Eagle, REVERSE the district court's partial denial of Gray's motion for summary judgment, and RENDER summary judgment in Gray's favor.

12