# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-30251

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2014

Lyle W. Cayce
Clerk

PAUL HOLDEN, ET AL.,

Plaintiffs,

v.

U.S. UNITED OCEAN SERVICES, L.L.C., ET AL.,

Defendants

U.S. UNITED OCEAN SERVICES, L.L.C.,

Third Party Plaintiff-Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Third Party Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-3670

Before DeMOSS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30251

U.S. United Ocean Services, L.L.C. ("United") appeals the district court's grant of summary judgment to St. Paul Fire and Marine Insurance Company ("St. Paul") in this insurance coverage dispute. For the reasons set forth below, we AFFIRM.

United entered into a General Services Agreement ("GSA") with Buck Kreihs Company, Inc. ("Buck Kreihs") under which Buck Kreihs would perform ship-repair work for United.[1] The GSA contained an indemnity provision in which Buck Kreihs agreed to indemnify United for all liabilities arising out of or related in any way to the work or services performed by Buck Kreihs for United or to Buck Kreihs's presence on United's property. The indemnity agreement applied even if the liability at issue was partially caused by United's fault or negligence; however, it did not apply to liability caused solely by United's fault or negligence. The GSA also required Buck Kreihs to procure a general liability policy and to name United as an additional insured under that policy.

St. Paul issued a general marine liability policy in which Buck Kreihs is the "Named Insured." The policy also provides that an additional insured is defined as "any . . . organization whom the Named Insured is required to add as an additional insured" under a written contract. It is undisputed that United is an additional insured under the policy.

Paul Holden, an employee of Buck Kreihs, was injured while preparing to remove a gangway that led from a dock at a Buck Kreihs's facility to the M/V BARGE BARBARA VAUGHT, a barge owned and operated by United. Pertinent here, Holden and his wife sued United, which made a demand upon

---

[1] The policy was originally procured by TECO Ocean Shipping, Inc. ("TECO"). After the policy was procured but before Paul Holden was injured, TECO changed its corporate structure and also changed its name to U.S. United Ocean Services, L.L.C. For the sake of clarity, this opinion refers both to U.S. United Ocean Services, L.L.C. and to its predecessor-in-interest TECO as "United."

No. 12-30251

St. Paul for indemnity, defense, and coverage as an additional insured. After initially proffering a defense, St. Paul denied coverage under the policy's Watercraft Exclusion, described below. United and the Holdens settled, leaving only this third-party suit to determine whether St. Paul owes coverage. The district court granted summary judgment to St. Paul, and United timely appealed.

"We review a grant of summary judgment *de novo*, applying the same standards as the district court." *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 874 (5th Cir. 2005) (citing *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001)). "Summary judgment is appropriate when the record discloses that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law." *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010); *see also* FED. R. CIV. P. 56(a). "Any reasonable inferences are to be drawn in favor of the non-moving party." *First Am. Bank v. First Am. Transp. Title Ins. Co.,* 585 F.3d 833, 837 (5th Cir. 2009) (citing *Robinson v. Orient Marine Co., Ltd.,* 505 F.3d 364, 366 (5th Cir. 2007)). "Because the interpretation of an insurance policy is a question of law, we review the district court's determination de novo." *First Am. Bank*, 585 F.3d at 837 (citing *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994); *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006)).

Under Louisiana law, an insurance policy "is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning." *Peterson v. Schimek*, 729 So. 2d 1024, 1029 (La. 1999). A policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms." *Id.* Once the insurer proves the applicability of an exclusion from

3

No. 12-30251

coverage, the insured bears the burden of proving that a claim comes within an exception to the exclusion. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 883 (5th Cir. 2009); *Vidrine v. LaFleur*, 979 So. 2d 609, 612 (La. Ct. App. 3d Cir. 2008).

We discern two possible ways in which there could be coverage for the Holden settlement: (1) if Buck Kreihs were liable via its indemnity, then United would sue Buck Kreihs which in turn would seek coverage from St. Paul as the named insured; or (2) if the Holdens' claims against United were covered by the policy pursuant to United's status as an additional insured under the policy—the policy thereby insuring United directly for its own liability. For different reasons, neither of these approaches results in reversal in United's favor.

The first option can be dispatched relatively quickly. The parties agree and we conclude that section 905(b) of the Longshore and Harbor Workers' Compensation Act voids Buck Kreihs's agreement to indemnify United. *See* 33 U.S.C. § 905(b). The general insuring clause of the policy extends coverage only to those obligations that the insured "shall become legally obligated to pay." Since Buck Kreihs cannot, as a matter of law, be "legally obligated to pay" the Holdens' claims against United, the policy's coverage provision does not encompass Buck Kreihs's attempted assumption of liability as to these claims. In other words, St. Paul can assert Buck Kreihs's defense to liability to United in this scenario. The insured-contract exception to the Watercraft Exclusion is of no effect under this scenario because Buck Kreihs is not "legally obligated to pay" United in the first instance. An exception to an exclusion cannot create coverage that does not otherwise exist. *See Colum. Cas. Co. v. Ga. & Fla. RailNet Inc.*, 542 F.3d 106, 112 (5th Cir. 2008); *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 40 (La. 2000). United does not dispute this analysis.

No. 12-30251

Instead, United argues that it is entitled to coverage because it is an additional insured. For its part, St. Paul concedes that United is an additional insured but contends that the Watercraft Exclusion applies:

**SECTION II: GENERAL LIABILITY COVERAGES**

**Coverage A: Bodily Injury and Property Damage**
* * *
    **2.    Exclusions**:
* * *
    This insurance does not apply to:
* * *
    **(5)    Watercraft**
    "Bodily injury" or "property damage" arising out of the ownership or operation of any watercraft:

    (a) Owned by an insured;

    (b) Chartered, leased, rented, or loaned to an insured.

    This exclusion does not apply to:
* * *
    (c)    Liability assumed under an "insured contract", but only that portion of the "insured contract" under which the "Named Insured" assumes the tort liability of another party for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

In turn, United does not rebut the applicability of the Watercraft Exclusion[2] but posits that the exception in subpart (c) above removes the effect of the exclusion. This contention is the crux of the parties' dispute.

_____

[2] The watercraft exclusion states that it applies to "'[b]odily injury' or 'property damage' arising out of the ownership or operation of any watercraft . . . [o]wned by an insured." In a footnote, United mentions that testimony in the record creates an issue of fact as to whether the exclusion was meant to apply only to watercraft owned by Buck Kreihs,

No. 12-30251

According to its plain language, the exception only applies to that liability that the *named* insured (Buck Kreihs) assumed under an insured contract. The exception does not apply in this case because United does not seek coverage as an injured claimant against Buck Kreihs as insured under the policy for "[l]iability assumed under an 'insured contract'"; rather, United seeks coverage as an *additional* insured directly under the policy for *its own liability to the Holdens.* Put differently, the exclusion plainly states that it only applies to a specific type of liability*,* which United is not subject to and is not seeking coverage for under the policy. Additionally, United is not the named insured, and the plain language of the exception states that it applies to liability that "the '*Named* Insured' assumes."[3]

United's argument fails because it conflates the two means by which the policy could potentially apply to the Holdens' claims against United. It thus assumes that the exception to the Watercraft Exclusion is triggered *when* an

---

the named insured. United has waived this issue by inadequately briefing it and relegating it to a footnote. *See Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003). Even so, the exclusion unambiguously refers to watercraft owned by *an* insured—not simply the named insured—and there is no dispute that United is *an* insured under the policy and that it owned the watercraft at issue. The testimony that United refers to cannot be used to create an ambiguity where none exists in the policy. *See Shocklee v. Mass. Mut. Life Ins. Co.*, 369 F.3d 437, 440 (5th Cir. 2004).

[3] The language of the insured-contract exception to the Watercraft Exclusion thus demonstrates that it was designed to protect the named insured against liability that it assumed under an insured contract. It was not designed to provide watercraft coverage to an additional insured. In this regard, the dissenting opinion recognizes that, if the GSA's indemnity provision was enforceable, the exception would serve to insure Buck Kreihs for the liability that it assumed on behalf of United. We do not suggest that the unenforceability of the GSA's indemnity provision changes the meaning of the insured-contract exception. Instead, it precludes the exact type of liability to which the exception applies. As stated above, because Buck Kreihs is not subject to liability assumed under the GSA, the policy does not apply to such liability in the first instance: it only applies to obligations that the insured "shall become legally obligated to pay." Conversely, while United is an additional insured under the policy and may be legally obligated to pay the Holdens' claims, the insured-contract exception does not apply to United's liability to the Holdens because United is not the named insured and is not subject to "[l]iability assumed under an 'insured contract.'"

insured contract is present between the named insured and an additional insured. Reading the policy in this manner, however, overlooks the structure of the policy and the operative language in the exception that makes it clear that it only "appl[ies] to . . . . [l]iability assumed under an 'insured contract.'" For this same reason, the cases United cites are inapposite. They deal with the question whether the unenforceability of an indemnity provision prevents a party from being an additional insured. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594–96 (5th Cir. 2011); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 492–95 (5th Cir. 2000); *Voisin v. O.D.E.C.O. Drilling Co.*, 744 F.2d 1174, 1176–79 (5th Cir. 1984).[4] This is not an issue in dispute in this case; the parties agree that United is an additional insured under the policy. Understanding that United is an additional insured, the issue remains whether the insured-contract exception to the Watercraft Exclusion applies. Since United in its role as an additional insured does not seek coverage for liability assumed under an insured contract by the named insured, United has not met its burden of showing that the exception to the Watercraft Exclusion applies. *See Martco*, 588 F.3d at 883.

---

[4] In *Gilbane* and *Swift* we faced the issue of whether a party "qualifie[d] as an additional insured" under an insurance policy, which turned on whether coverage was "required by written contract or written agreement that is an 'insured contract.'" *Gilbane*, 664 F.3d at 594; *see also Swift*, 206 F.3d at 491–92. This issue ultimately required deciding whether an unenforceable indemnity agreement constituted an "insured contract." We held that that question "turns not on enforceability, but on whether [the named insured] *agreed to* 'assume the tort liability of another party.'" *Gilbane*, 664 F.3d at 596 (emphasis in original). This holding—that an unenforceable agreement to assume liability constitutes an insured contract—does not resolve the separate issue faced here of whether an exception to an exclusion for "[l]iability assumed under an 'insured contract'" encompasses an additional insured's direct demand under a policy for its own liability.

Similarly, *Voisin* resolved the distinct question, not at issue in this case, of whether an additional insured provision is invalidated by section 905(b) of the Longshore and Harbor Workers' Compensation Act. *See* 744 F.2d at 1177.

No. 12-30251

While "equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer," this rule of strict construction applies only if the language of the exclusion is ambiguous. *Henry v. S. La. Sugars Coop.*, 957 So. 2d 1275, 1278 (La. 2007) (quoting *Bonin*, 930 So. 2d at 911). We may not "strain to find such ambiguities, if, in so doing, [we] defeat probable intentions of the parties. This is so even when the result is an apparently harsh consequence to the insured." *Sharp v. Fed. Sav. & Loan Ins. Corp.*, 858 F.2d 1042, 1045 (5th Cir. 1988) (citation and internal quotation marks omitted). Here, the Watercraft Exclusion unambiguously applies and its insured-contract exception plainly does not encompass the liability at issue. We may not strain to find otherwise. Accordingly, as the district court concluded, the Watercraft Exclusion excludes from coverage the Holdens' claims against United. Therefore, we AFFIRM.

No. 12-30251

PRISCILLA R. OWEN, Circuit Judge, dissenting.

All agree that U.S. United Ocean Services, L.L.C. (United) is an additional insured under the general marine liability policy issued by St. Paul Fire & Marine Insurance Company (St. Paul). Because the majority opinion concludes that the Watercraft Exclusion denies coverage to United, I respectfully dissent.

United is an additional insured under the policy that Buck Kreihs obtained from St. Paul. The majority opinion holds, however, that the policy's Watercraft Exclusion excludes the claims that the Holdens asserted against United. I respectfully disagree.

The policy contains a "Blanket Additional Insured Endorsement" which amended the policy "to include as an additional insured . . . any person or organization whom the Named Insured is required to add as an additional insured of this policy under . . . [a] written contract." St. Paul agrees that United was an additional insured under this endorsement. St. Paul also agrees that United was insured under the "Bodily Injury and Property Damage" section of the policy, which provides that "[t]he Company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of : 'Bodily Injury' 'Property Damage' to which this insurance applies." United was legally obligated to pay the Holdens. The only argument St. Paul asserts with regard to United's status as an additional insured is that the Watercraft Exclusion excludes coverage.

The Watercraft Exclusion provides:

## SECTION II: GENERAL LIABILITY COVERAGES

### Coverage A: Bodily Injury and Property Damage
* * *
**2.    Exclusions:**
* * *
This insurance does not apply to:

9

No. 12-30251

* * *

**(5)   Watercraft**

"Bodily injury" or "property damage" arising out of the ownership or operation of any watercraft:

(a) Owned by an insured;

(b) Chartered, leased, rented, or loaned to an insured.

This exclusion does not apply to:

* * *

(c)   Liability assumed under an "insured contract", but only that portion of the "insured contract" under which the "Named Insured" assumes the tort liability of another party for "bodily injury" or "property damage" to a third person or organization.   Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Whether the Watercraft Exclusion applies turns on the interpretation of the exception to the exclusion.  The question is whether United's liability to the Holdens was "Liability assumed under . . . that portion of the 'insured contract' under which the "Named Insured" [Buck Kreihs] assumes the tort liability of another party [United]."  The district court reasoned that because Buck Kreihs's assumption of United's liability was void under the LHWCA, "Buck Kreihs has not assumed the tort liability of [United] concerning Holden's alleged injuries."  That reasoning is contrary to decisions of our court.

In *Mid-Continent Casualty Co. v. Swift Energy Co.*,[1] Air Equipment, a contractor, agreed to indemnify Swift, the operator of an oil drilling site.  This indemnity agreement was alleged to be unenforceable under the Texas Oilfield

---

[1] 206 F.3d 487, 490 (5th Cir. 2000).

No. 12-30251

Anti-Indemnity Act.[2]  An insurer, Mid-Continent, had issued a policy to Air Equipment and argued that Swift was not entitled to coverage.  One of the arguments Mid-Continent made was that the agreement between Air Equipment and Swift was not an "insured contract" under the policy.[3]  Mid-Continent contended that "if the indemnity provisions of the [agreement between Air Equipment and Swift] are unenforceable, Mid-Continent never actually assumed Swift's liabilities" and therefore, the indemnity agreement would not qualify as an insured contract.[4]  St. Paul's argument in the present case that Buck Kreihs never assumed United's liabilities is indistinguishable. We rejected the argument in *Swift*, concluding that even were the indemnity agreement invalid under the Texas law, it qualified as an "insured contract."[5]

In *Gilbane Building Co. v. Admiral Insurance Co.*,[10] this court also examined policy language similar to that contained in St. Paul's policy.  In *Gilbane*, a general contractor (Gilbane) entered into an agreement with a subcontractor (Empire Steel) under which Empire Steel agreed to indemnify

---

[2] TEX. CIV. PRAC. & REM. CODE ANN. §§ 127.001-.007.

[3] *Swift*, 206 F.3d at 492; *see also id.* (explaining that the policy in question defined "insured contract" to include, "'That part of any contract or agreement pertaining to your business . . . under which you [Air Equipment] assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.'") (alterations in original).

[4] *Id.* at 493.

[5] *Id.* ("In light of the rule that ambiguous policy language is interpreted to find coverage . . ., the lack of relevant precedent and the existence of strong opposing arguments appear to dispose of Mid-Continent's argument that the MSA is not an 'insured contract,' even if we grant the assumption that the MSA's indemnity provisions are invalid under the TOAIA.").

[10] 664 F.3d 589 (5th Cir. 2011).

11

No. 12-30251

Gilbane and to add Gilbane as an additional insured under its commercial general liability policy.[11] When an employee of Empire Steel was injured, he sued Gilbane, and Gilbane sought coverage as an additional insured from Empire Steel's insurer.[12] The policy "provide[d] coverage to additional insureds . . . so long as Empire Steel had previously assumed the liability of the potential additional insured in a written contract."[13] The policy provided that a party was an additional insured if coverage was required by an "insured contract," and the policy defined an "insured contract" as one in which "the named insured assume[d] the tort liability of the additional insured."[14] In addressing whether Gilbane qualified as an additional insured, we were required to determine whether Empire Steel assumed the tort liability of Gilbane.[15]

The insurer argued that there was no assumption of liability because the indemnity provision in the contract between Empire Steel and Gilbane was unenforceable under Texas law.[16] We held that the question was not whether the assumption of liability was enforceable but rather whether Empire Steel had *agreed to* assume Gilbane's tort liability.[17] Because Empire Steel had

---

[11] *Gilbane*, 664 F.3d at 592-93.

[12] *Id.* at 592.

[13] *Id.* at 593.

[14] *Id.* at 594 (internal quotation marks omitted).

[15] *Id.* at 594-95.

[16] *Id.* at 595.

[17] *Id.* at 596.

12

agreed not only to indemnify Gilbane but also to secure insurance on behalf of Gilbane, we held that Empire Steel had agreed to assume Gilbane's tort liability.[18]  Gilbane therefore qualified as an additional insured.[19]

The majority opinion's attempt to distinguish *Gilbane* and *Swift* is unpersuasive.  Although the majority opinion says that it is relying on "Named Insured" language in the exception to the Watercraft Exclusion, the majority opinion is in reality giving effect to arguments regarding the meaning of an "insured contract" and the assumption by a named insured of the tort liability of additional insureds that we rejected in *Gilbane* and *Swift*.  The majority opinion states that because the policy uses the term "Named Insured," the exception to the Watercraft Exclusion limits its scope to claims made by Buck Kreihs under the policy and thus the exception cannot apply to United.  This entirely ignores the language in the exception to the Watercraft Exclusion regarding the Named Insured's assumption of the tort liability of another party, in this case United, for bodily injury.

Buck Kreihs assumed the liability of United under an "insured contract." It was United's tort liability to those such as the Holdens that the insurance policy's additional insured provisions were drafted to cover.  The exception to the Watercraft Exclusion was designed to make clear that the Watercraft Exclusion did not negate coverage for an additional insured.  The exception to the Watercraft Exclusion focuses on "[l]iability assumed under an 'insured

---

[18] *Id.* ("Empire Steel contracted not only to indemnify Gilbane, but also to secure insurance on its behalf; by doing so, it agreed to assume Gilbane's tort liability.  That provision is not rendered void by the indemnity provision, even if it is unenforceable.").

[19] *Id.*

13

contract', but only that portion of the 'insured contract' under which the 'Named Insured' assumes the tort liability of another party for 'bodily injury' or 'property damage' to a third person or organization." The "portion of the 'insured contract' under which the 'Named Insured' [Buck Kreihs] assume[d] the tort liability of another party" was the portion of the indemnity agreement under which Buck Kreihs assumed the liability of United to Buck Kreihs's employees. It is that "[l]iability," namely, *United's* liability that Buck Kreihs, the Named Insured, assumed, and to which the exception to the exclusion applies. The fact that Buck Kreihs's assumption of liability is unenforceable does not mean that the exception to the exclusion ceases to apply to *United's* liability.

The meaning of the policy is clear when the indemnity obligations of the Named Insured are enforceable. The Watercraft Exclusion in the policy excludes "'bodily injury' . . . arising out of the ownership or operation of any watercraft . . . [o]wned by an insured." Paul Holden's bodily injury arose out of the ownership or operation of a watercraft owned by United, "an insured" under the policy. If the policy said nothing further, United's liability for Holden's injuries would be excluded. However, there is an exception to this exclusion. The Watercraft Exclusion does not apply to "[l]iability assumed under an 'insured contract', but only that portion of the 'insured contract' under which the 'Named Insured' assumes the tort liability of another party for 'bodily injury' or 'property damage' to a third person or organization." The Named Insured, Buck Kreihs, assumed the additional insured's (United's) liability under the portion of the indemnity agreement in which Buck Kreihs assumed United's tort liability to Buck Kreihs's employees. Therefore, if the indemnity agreement were enforceable, United's liability— which was

No. 12-30251

"['l]iability assumed under an 'insured contract'" by the Named Insured—
would not be excluded by the Watercraft Exclusion. It is the *liability* of
"another party," including the liability of an additional insured, not Buck
Kreihs's *own* tort liability, that is excepted from the Watercraft Exclusion. The
majority opinion's reasoning fails to comprehend this. The fact that the Named
Insured's assumption of an additional insured's liability is unenforceable does
not change the meaning of the exception to the Watercraft Exclusion. The
majority opinion fails to give meaning to the precise terms of the policy.

Had St. Paul wanted to condition application of the insured-contract
exception on the validity of the assumption of liability by the Named Insured,
it could have explicitly said so in the policy.[20] Construing the policy in favor of
coverage for United is consistent with Louisiana contract law, which provides
that "[e]xclusionary provisions in insurance contracts are strictly construed
against the insurer, and any ambiguity is construed in favor of the insured."[21]
As to policy exclusions under Louisiana law, "[t]he insurer has the burden of
proving that a loss comes within a policy exclusion."[22]

Under Louisiana law, "[w]hen the words of a contract are clear and
explicit and lead to no absurd consequences, no further interpretation may be

---

[20] *See LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873, 875 (5th Cir. 1999) ("If the parties had determined to condition . . . assured status upon the legal enforceability of the indemnity agreement, they very easily could have done so.").

[21] *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So. 2d 975, 976 (La. 1991) (citing *Capital Bank & Trust v. Equitable Life Assurance Soc'y*, 542 So. 2d 494 (La. 1989); *Albritton v. Fireman's Fund Ins. Co.*, 70 So. 2d 111 (La. 1953)).

[22] *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993) (citing *Capital Bank*, 542 So. 2d at 494; *Lado v. First Nat'l Life Ins. Co.*, 162 So. 579 (La. 1935)).

15

No. 12-30251

made in search of the parties' intent."[23]  The majority opinion's interpretation of the exception adds a limitation that is not supported by the language of the exception.  The Watercraft Exclusion should not apply, and United's claims should be covered under the policy.

*     *     *

For the foregoing reasons, I respectfully dissent.  I would reverse the judgment of the district court.

---

[23] LA. CIV. CODE ANN. art. 2046 (2008).