# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2011

No. 10-20817

Lyle W. Cayce
Clerk

GILBANE BUILDING COMPANY,

Plaintiff - Appellee,

v.

ADMIRAL INSURANCE COMPANY,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This insurance coverage case arises out of an underlying personal injury lawsuit brought by Michael Parr against Gilbane Building Company. Gilbane, a general contractor, sought defense and indemnification from Admiral Insurance Company based on an insurance policy held by Empire Steel Erectors, a subcontractor. On cross-motions for summary judgment, the district court determined that Admiral owed a duty to defend and indemnify. We REVERSE the summary judgment on the duty to defend and AFFIRM the judgment on the duty to indemnify.

No. 10-20817

## I. Background.

The material facts of this case are undisputed. Parr sustained injuries on a construction site while climbing down a ladder. He sued Gilbane, the general contractor operating the construction project, and Baker Concrete, the company responsible for installing and maintaining the ladders at the site.[1] He did not sue his employer, Empire Steel. He alleged that recent rainstorms had caused the construction site to accumulate mud and that Gilbane had been negligent in failing to keep the workplace clean.

Gilbane requested that Admiral Insurance defend and indemnify it as an additional insured under the commercial general liability (CGL) policy that Empire Steel had obtained from Admiral. The CGL policy contains the following provisions that are relevant here:

### SCHEDULE

**Name of Additional Insured Person(s) or Organization(s):**
Any person or organization that is an owner of real property or personal property on which you are performing ongoing operations, or a contractor on whose behalf you are performing ongoing operation, *but only if coverage as an additional insured is required by written contract or written agreement that is an "insured contract,"* and provided that the "bodily injury," "property damage" or "personal & advertising injury" first occurs subsequent to execution of the contract or agreement. . . .

A.    **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, *but only with respect to liability for "bodily injury," "property damage" or "personal & advertising injury" caused, in whole or in part, by:*
*1. Your acts or omissions; or*
*2. The acts or omissions of those acting on your behalf;*

---

[1] Parr eventually settled his lawsuit against Baker Concrete, and Baker is not a party to this appeal.

2

> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above. . . .
>
> 9. "Insured contract" means: . . .
>
>> f. That part of any other contract or agreement pertaining to your business . . . *under which you assume the tort liability of another party* to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

In other words, the CGL policy provides coverage to additional insureds for their own or their agents' acts or omissions, so long as Empire Steel had previously assumed the liability of the potential additional insured in a written contract.

Gilbane requested coverage from Admiral, claiming that it qualified as an additional insured under the CGL policy. Gilbane based its claim on the Trade Contractor Agreement (TCA) between it and Empire Steel, according to which Empire Steel agreed to secure insurance coverage for Gilbane as an additional insured. Empire also agreed to "indemnify and hold harmless" Gilbane and all of its agents for any losses caused by Empire, regardless of whether those losses were caused in part by Gilbane.

Admiral denied coverage under the policy to Gilbane for reasons not relevant here. Parr and Gilbane eventually settled the lawsuit, and Gilbane filed an action for declaratory judgment and breach of contract against Empire and Admiral, seeking a declaration that Admiral had a duty to defend and indemnify it. The parties filed competing motions for summary judgment. The district court granted Gilbane's motion as to the duty to defend but initially denied it as to the duty to indemnify because of outstanding factual issues. Later, the district court held a trial by written submission on stipulated facts. It found that Parr had tripped while climbing down a ladder carrying an

extension cord, and his feet had gotten tangled in the cord. The court determined that Admiral had a duty to indemnify because a jury would have found Parr or Empire at least 1% responsible for Parr's injuries. Admiral appealed.

## II. Standard of Review.

We review a district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied, and we view the evidence in the light most favorable to the nonmoving party. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 561-62 (5th Cir. 2010). We affirm "only if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law." *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007). We review the district court's findings of fact for clear error. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011).

## III. Interpreting Insurance Policies in Texas.

"In this diversity action, we must apply Texas law as interpreted by Texas state courts." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). Our primary obligation is to make an *Erie* guess as to how the Texas Supreme Court would decide the question before us. *Am. Int'l Specialty Lines Ins. Co.*, 620 F.3d at 564. "When making an *Erie* guess, our task is to attempt to predict state law, not to create or modify it." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) (internal quotation marks omitted). We consider Texas Supreme Court cases that, "while not deciding the issue, provide guidance as to how the Texas Supreme Court would decide the question before us." *Am. Int'l Specialty Lines Ins. Co.*, 620 F.3d at 564. Moreover, while "the decisions and dicta of the Texas Supreme Court weigh more heavily in our *Erie* analysis," we also consider decisions of the intermediate appellate courts in determining how the Texas Supreme Court would decide this issue. *Id.* at 566. We are bound by our own precedent interpreting Texas law unless there has

been an intervening change in authority. *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979); *see, e.g.*, *OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.*, 496 F.3d 361, 364-65 (5th Cir. 2007).

Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify. *See D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). The Texas Supreme Court has explained that the two duties are distinct, and they are to be decided separately. *Id.* "Two documents determine an insurer's duty to defend—the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review 'without regard to the truth or falsity of those allegations.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). This is known as the eight-corners rule. *Id.* The duty to indemnify, on the other hand, is "a matter dependent on the facts and circumstances of the alleged injury-causing event, [and] parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify." *D.R. Horton-Tex.*, 300 S.W.3d at 741. With these principles in mind, we now consider Admiral's duties to defend and indemnify.

## IV.  The Duty to Defend.

In order to decide whether Admiral owed Gilbane a duty to defend under the policy, we must consider two issues: (1) whether Gilbane qualifies as an additional insured under the policy, and (2) whether, under Texas's strict eight-corners rule, the facts alleged in the underlying Parr lawsuit are sufficient to trigger Admiral's duty to defend Gilbane. An affirmative answer to both is required to affirm the district court's determination that Admiral had a duty to defend Gilbane. Gilbane bears the burden on each of these issues. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996).

A.  Additional Insured Status.

Initially, we must address whether Gilbane qualifies as an additional insured under the CGL policy, which is issued solely to Empire as a named insured.  According to the policy, a party is an additional insured if coverage "is required by written contract or written agreement that is an 'insured contract.'"  "Insured contract" is a commonly used term of art in Texas insurance law, usually defined by the insurance policy to mean a separate contract that acts as insurance.  *See Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124-25 (Tex. 2010).  Here, the policy defines an insured contract as one where the named insured "assume[s] the tort liability" of the additional insured.  The district court found that the TCA, which required Empire to secure insurance coverage for Gilbane, qualified as an insured contract.

Admiral argues that the TCA is not an insured contract because its indemnity provision is unenforceable under Texas law, and therefore Empire never actually assumed any tort liability.  Because indemnity provisions effect an extraordinary result—"exculpat[ing] a party from the consequences of its own negligence" before that negligence even occurs—Texas imposes a fair notice requirement.  *Dresser Indus., Inc. v. Page Petro., Inc.*, 853 S.W.2d 505, 508-09 (Tex. 1993); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987).  Specifically, the fair notice requirement incorporates the express negligence doctrine and the conspicuousness requirement.  *Dresser Indus.*, 853 S.W.2d at 508.  A contract that fails to comply with either requirement is unenforceable under Texas law.  *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).  Admiral argues that the TCA does not comply with the express negligence doctrine, which requires that the intent to indemnify a party from the consequences of its own negligence "must be specifically stated in the four corners of the document."  *Id.*

We assume, without deciding, that the TCA's indemnity provision is unenforceable under Texas law.  We therefore must decide whether the TCA can

still be an insured contract under the policy. Although the Texas Supreme Court has never addressed this precise issue, it is largely resolved by our opinion in *Swift Energy Co.*, 206 F.3d at 492-93. There, Swift sought coverage in an underlying negligence case as an additional insured under a policy. *Id.* at 489. The policy defined "insured contract" to include a contract under which the insured "assume[s] the tort liability of another party." The insurance company argued that it had no duty to defend because the master service agreement between the contractor and Swift violated the Texas Oilfield Anti-Indemnity Act. *See* Tex. Prac. & Rem. Code Ann. §§ 127.001-.007. As such, the insurance company contended that the agreement was unenforceable and not an insured contract because it did not assume any liability. *Swift Energy Co.*, 206 F.3d at 492-93. We first noted that, when an insurer seeks to deny coverage, the terms of an insurance policy should be construed broadly in favor of coverage. *Id.* Based on that principle and the lack of relevant precedent, we held that the agreement was an insured contract within the context of interpreting the policy because Mid-Continent had intended to assume Swift's tort liability. *Id.* at 493. The indemnity provision therefore qualified as an insured contract, and Swift qualified as an additional insured. *Id.*; *see also LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873, 875 (5th Cir. 1999) (holding that an indemnity provision need not be valid and enforceable to trigger obligations under the contract, so long as the parties agreed to indemnity); *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 683 n.20 (5th Cir. 2010).

Indeed, our holding in *Swift* is consistent with Texas case law. The Texas Supreme Court has declined to apply requirements for indemnification clauses to additional insured provisions, noting that "the express negligence doctrine in Texas has been applied only to indemnity provisions, not insurance-shifting provisions." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 806 (Tex. 1992) (citing *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724 (Tex.1989)). In *Getty*, the Texas Supreme Court considered whether the Texas

Oilfield Anti-Indemnity Act, which "provides that an agreement pertaining to an oil or gas well is void if it purports to indemnify a party from loss or liability for damage arising out of its own negligence," should be extended to render void an additional insured provision effecting the same result. *Id.* at 803. The insurance company argued that allowing the oil company additional insured status would allow it to make an end run around the statute. The Texas Supreme Court rejected that argument, however, emphasizing that an insurance contract is separate and distinct from an indemnity provision. *Id.* at 806; *see Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 670 (Tex. 2008).

Here, as in *Swift*, Admiral's argument relies on the policy language defining an insured contract as one that "assume[s] the tort liability of another party," and concludes that an unenforceable provision does not actually assume liability.[2] However, as we explained in *Swift*, the additional insured question turns not on enforceability, but on whether Empire Steel *agreed to* "assume the tort liability of another party." In the TCA, Empire Steel contracted not only to indemnify Gilbane, but also to secure insurance on its behalf; by doing so, it agreed to assume Gilbane's tort liability. That provision is not rendered void by the indemnity provision, even if it is unenforceable. As such, Empire Steel agreed to assume Gilbane's tort liability, and Gilbane qualifies as an additional insured.

---

[2] In support of its argument to the contrary, that a contract can only be an insured contract if it is enforceable, Admiral cites two unreported cases applying Texas law, neither from the Texas Supreme Court or this court, *see Tri-State Ins. Co. v. Rogers-O'Brien Const. Co.*, No. 05-95-01639-CV, 1997 WL 211534, at *3-4 (Tex. App.—Dallas April 30, 1997); *Motiva Enters., LLC v. Liberty Mut. Ins. Co.*, No. H-05-1473, 2006 WL 3246039 (S.D. Tex. Nov. 6, 2006), and one case applying Mississippi law, *Certain London Mkt. Ins. Cos. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 269 F. Supp. 2d 722, 733 (N.D. Miss. 2003). We do not find those cases persuasive in light of our holding in *Swift*. Moreover, in *Motiva* and *Tri-State Ins. Co.*, the parties agreed that status as an additional insured turned on the enforceability of the insured contract, so the courts did not squarely address whether that was the correct inquiry. *See Tri-State Ins. Co.*, 1997 WL 211534, at *3; *Motiva*, 2006 WL 3246039, at *4.

B.  Whether the Pleadings Triggered the Duty to Defend.

Having determined that Gilbane is an additional insured, we must consider whether the pleadings in the underlying lawsuit are sufficient to trigger Admiral's duty to defend under the policy.  In other words, we must decide whether the pleadings sufficiently allege that Empire or someone acting on its behalf, including Parr, caused Parr's injuries.

### 1.  Texas's eight-corners rule.

Texas strictly follows the "eight-corners rule," meaning the duty to defend may only be determined by the facts alleged in the petition and the coverage provided in the policy.  *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009).  We consider only the facts affirmatively alleged in the Third Amended Pleading, *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201-02 (Tex. 2004), and we take those facts as true, *Pine Oak Builders*, 279 S.W.3d at 654.  If the petition does not affirmatively allege facts that would trigger the duty under the policy, Admiral is not required to defend Gilbane.  *See id.*; *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005).

The eight-corners doctrine "strictly circumscribe[s]" a court's analysis of the duty to defend.  *D.R. Horton-Tex.*, 300 S.W.3d at 744.  In performing its eight-corners review, a court may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity.  *Nat'l Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997).  Moreover, "[t]he Texas Supreme Court has never recognized any exception to the strict eight corners rule."  *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529, 531 (5th Cir. 2004).  Although ambiguities will be resolved in favor of coverage, "[t]he fact that the parties disagree as to coverage does not create an ambiguity."  *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004).

The Texas Supreme Court has recently reiterated that a "policy imposes no duty to defend a claim that might have been alleged but was not, or a claim

that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted." *Pine Oak Builders*, 279 S.W.3d at 655-56. In that case, the insurance company would only have had a duty to defend if one of Pine Oak's subcontractors had caused the damage, not if Pine Oak had itself caused it. *Id.* at 654. The petition alleged that Pine Oak negligently built the plaintiff's house by, among other things, "construct[ing] columns that provided inadequate support" and "fail[ing] to properly seal seams." *Id.* Pine Oak argued that the complained-of work was performed by subcontractors, triggering the duty to defend. The court held that there was no duty to defend, however, because "[the pleading] alleges that Pine Oak alone is liable for its own actionable conduct." *Id.* at 655. Based on *Pine Oak Builders*, intermediate courts of appeals likewise have limited review to those facts alleged in the petition without speculating as to facts that could have been alleged. *See, e.g.*, *AccuFleet, Inc. v. Hartford Fire Ins. Co.*, 322 S.W.3d 264, 273 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that it could not "disregard [the] express pleadings" alleging negligence by specific parties); *see also Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 501 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that the insurer did not have a duty to defend because the pleadings alleged that the defendants had acted intentionally rather than negligently). Accordingly, in analyzing this case, we may not infer additional facts that are not in the pleadings.

### 2. The policy.

We next consider the scope of coverage in the Admiral policy. In doing so, we examine the policy as a whole to ascertain the parties' true intent. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 203. Here, the policy provides coverage for additional insureds, "but only with respect to liability for 'bodily injury,' 'property damage' or 'personal & advertising injury' caused, in whole or in part, by . . . [Empire's] acts or omissions; or . . . [t]he acts or omissions of those acting on [Empire's] behalf."

Gilbane argues that our interpretation of the policy should turn on the phrase "with respect to," which has been interpreted as requiring less than proximate cause. *Evanston Ins. Co.*, 256 S.W.3d at 666. In *Evanston*, ATOFINA sought coverage for the death of an employee of its subcontractor, Triple S, under a policy Triple S had with Evanston. The policy covered an additional insured "only with respect to operations performed by [Triple S] or on [its] behalf, or facilities owned or used by [Triple S]." *Id.* at 664. Evanston argued that ATOFINA was not an additional insured because the death was caused by ATOFINA's own negligence, not by Triple S; as a result, it argued, the death was not "with respect to . . . operations performed by [Triple S]." The Texas Supreme Court rejected that argument, however, explaining that Evanston was equating "with respect to" and proximate cause and that, in reality, the policy only required "a causal connection or relation," which was satisfied by the fact that the death occurred at ATOFINA's premises. *Id.* at 666-67.

Gilbane's argument fails, however, when we examine the policy at issue in this case as a whole. Unlike in *Evanston*, the policy here explicitly requires that the injuries be "caused, in whole or in part, by" Empire. Moreover, the Texas Supreme Court has defined "caused by" as requiring proximate causation. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 202-03 (citing *Red Ball Motor Freight, Inc. v. Emp'rs Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)). As such, Admiral owes Gilbane a duty to defend only if the underlying pleadings allege that Empire, or someone acting on its behalf, proximately caused Parr's injuries.

### 3. The petition.

We turn now to the facts alleged in the pleadings. Parr's Third Amended Petition alleges only one cause of his injuries: "[Parr's] injuries were brought to occur, directly and proximately by reason of the negligence of the Defendants herein (the 'Gilbane Defendants')." Specifically, it alleges:

> [T]he Gilbane Defendants failed to keep the construction site in a
> clean and functional condition. During the month of January 2007

11

the Houston area received large amounts of rainfall. As a result of this rainfall, the construction site accumulated large amounts of mud. This mud was tracked in from the surrounding area into the building under construction. As a result of the mud being tracked inside, the work area became slippery and hazardous. The Gilbane Defendants had actual notice of the danger caused by the mud from e-mails and other information given to them by their subcontractors. Despite the Gilbane Defendants' knowledge of the dangers posed by the mud, these Defendants took no action to correct the problem, and as a result, Plaintiff slipped and fell causing his injuries. . . . [T]he Gilbane Defendants controlled the construction elevator on the jobsite . . . . Despite the fact that the construction workers worked until five o'clock each day, the Gilbane Defendants sent the elevator operator home around four o'clock. Due to the fact that the elevators were left unmanned and useless after the elevator operator went home, Plaintiff was forced to walk down the ladder where he ultimately slipped and fell.

In deciding that Admiral had a duty to defend, the district court characterized the petition as stating that "the injuries occurred when Parr was walking down the ladder with muddy boots," which it considered sufficient to implicate Parr's contributory negligence. Contrary to that characterization, however, the petition does not allege that Parr climbed down the ladder with "muddy boots." Rather, it alleges that Gilbane's negligence caused the work area to become "slippery and hazardous," causing Parr's injuries.

Gilbane argued before the district court, as it does here, that because Parr or Empire could potentially be found contributorily negligent at a later trial, inferring facts to support the plaintiff's contributory negligence does not run afoul of the eight-corners rule. The district court accepted that argument, determining, "After reviewing only the eight-corners of the petition and the Admiral policy, the court cannot say that Parr himself, acting on behalf of Empire Steel in the course of his job, *was not possibly a contributing, proximate cause of his injuries*." In other words, it determined that the pleadings did not conclusively rule out Parr's negligence; it was possible a jury could eventually find that Parr caused his own injuries.

Such a construction, however, improperly shifts the burden of proof, requiring the party disputing coverage to establish that the pleadings *do not* potentially support a covered claim. Although the Texas Supreme Court has held that an insurer has a duty to defend "if a plaintiff's factual allegations potentially support a covered claim," it has never applied the "potentiality" standard to deviate from the eight-corners rule. *Zurich Am. Ins. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). Rather, it has used the standard to characterize the description of claims in the petition, determining whether they potentially were covered. In *Zurich*, for example, the Texas Supreme Court held that the allegations in the pleadings that the plaintiffs had suffered "biological injury" potentially included a claim for "bodily injury." *Id.* at 492-93. It considered only the facts alleged in the pleadings and did not make any factual assumptions or inferences that were not pleaded. *Id.*; *see, e.g.*, *GuideOne Elite Ins. Co.*, 197 S.W.3d at 310 (holding that allegations of sexual assault by an employee of the church fell within coverage for "sexual misconduct").

Likewise, the Texas Supreme Court has held that, even applying the potentiality standard, courts cannot "imagine factual scenarios" that would trigger coverage. *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 142. There, the insurance policy provided coverage for "bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." *Id.* at 141. The pleading alleged that the defendant "negligently discharged a firearm and caused a bullet to strike" the victim. *Id.* The court of appeals had incorrectly applied the potentiality standard, hypothesizing that "[i]f a driver were authorized by Merchants to carry a weapon when operating its truck in order to protect the truck and its contents and if the driver negligently discharged a firearm while operating that truck, then damages caused by the discharge would arguably arise out of the operation of that vehicle." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 919 S.W.2d 903, 906 (Tex. App.—Eastland

13

1996, writ granted). The Texas Supreme Court reversed, holding that the facts affirmatively alleged did not potentially state a covered claim. 939 S.W.2d at 142. The district court should only have considered whether the facts pleaded affirmatively implicated Parr's or Empire's negligence.

Applying the correct standard, the allegations in the pleadings do not implicate either Parr's or Empire Steel's fault. Indeed, even the portion of the petition relied on by the district court alleges that Parr's injuries were caused only by Gilbane: "Despite the Gilbane Defendants' knowledge of the dangers posed by the mud, these Defendants took no action to correct the problem, and as a result, Plaintiff slipped and fell causing his injuries." Simply put, the petition does not allege any facts suggesting that Parr's own negligence could have caused his injuries.

Nor does the petition allege that Empire caused Parr's injuries. Indeed, the only mention of Empire in the pleadings is, "Plaintiff was an employee of Empire Steel Erectors, L.P., performing work under a contract between Empire Steel Erectors, L.P. and Gilbane . . . ." In its brief, Gilbane concedes that the requisite language is not in the pleadings, recognizing "Parr's petition's silence as to any acts or omissions of Empire." Limiting our review to the face of the petition, as we must, it does not affirmatively allege any facts implicating the negligence of either Empire or Parr, and Admiral has no duty to defend.

*4. Should we make an exception to the eight-corners rule?*

Gilbane nonetheless asks us to create an exception to the strict eight-corners rule—even though the Texas Supreme Court has never done so—that would allow us to consider facts not alleged in the petition. The Texas Supreme Court has made clear that a "policy imposes no duty to defend . . . a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, *for whatever reason*, has not been asserted." *Pine Oak Builders*, 279 S.W.3d at 655-56 (emphasis added). Employing that principle, we decline to look outside the petition as requested by Gilbane.

First, Gilbane asks us to create an exception to the eight-corners rule because, it argues, a plaintiff would never allege his own negligence. It therefore argues that we should infer that Parr's negligence would be implicated at trial. Gilbane argues that Texas's contributory negligence statute, which requires that the trier of fact determine the percentage of responsibility for multiple parties, including for each claimant, automatically implicates a plaintiff's own negligence. *See* Tex. Civ. Prac. & Rem. Code § 33.003(a). Thus, under this logic, a plaintiff would be assumed to be contributorily negligent for purposes of a duty to defend regardless of whether any negligence is alleged.

Gilbane's argument is contrary to Texas law. A plaintiff's negligence is not automatically implicated in every case. Texas does not require the trier of fact to consider contributory negligence unless that allegation is in the pleadings and the evidence presented at trial. *See* Tex. R. Civ. P. 278 ("The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."). In fact, section 33.003(b) mandates that a plaintiff's negligence will not be submitted to the jury "without sufficient evidence to support the submission." Tex. Civ. Prac. & Rem. Code § 33.003(b). As such, Texas's contributory negligence statute has no bearing on the duty to defend.

Moreover, the Texas Supreme Court recently recognized that if it were to create an exception to the eight-corners rule, it would do so only "'when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.'" *GuideOne Elite Ins. Co.*, 197 S.W.3d at 309 (quoting *Northfield Ins. Co.*, 363 F.3d at 531 (emphasis in original)). It declined to create an exception for evidence that goes both to coverage and the merits of the case because doing so would conflate the duty to defend with the duty to indemnify, which is determined by the facts proven in the underlying trial. *Id.*

15

at 310. Here, whether Parr acted negligently in climbing down the ladder goes directly to the merits of the underlying negligence suit, as well as to the duty to defend. We are without authority to create an exception where the Texas Supreme Court has specifically declined to do so. *See SMI Owen Steel Co.*, 520 F.3d at 442.

Second, Gilbane argues that we should go outside the eight corners of the pleadings and policy in this case because Parr could not plead Empire's negligence without triggering workers' compensation issues. Gilbane recognizes the "silence" in the pleadings as to Empire's negligence but asks that we disregard it because it "indicate[s] not that Empire committed no acts or omissions, but only that Empire is statutorily immune to suit." Importantly, however, there is no allegation of a workers' compensation policy in the pleadings, and "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination." *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006).

The Texas Supreme Court has refused to recognize an exception to the eight-corners rule even when everyone involved in the suit knows the true facts. *See Pine Oak Builders*, 279 S.W.3d at 655. For example, in *GuideOne Elite Ins.*, the court declined to consider undisputed evidence that the employee who had allegedly assaulted the plaintiff ceased working for the defendant before the policy took effect. 197 S.W.3d at 307. Similarly, here, it is only by looking to evidence outside of the pleadings—which we may not do—that we know about the existence of the policy. Creating an exception here would be contrary to Texas law, and we decline to do so.[3] Moreover, even if we could consider the

---

[3] We recognize that this policy presents a seemingly difficult hurdle for additional insureds to trigger coverage while navigating difficult workers' compensation and contributory negligence issues. Nonetheless, it is not our place to create exceptions where the Texas Supreme Court has not shown that it would. As a practical matter, however, we observe that parties sometimes amend their pleadings to trigger coverage on the verge of settlement. *See, e.g.*, *Huffhines*, 167 S.W.3d at 496.

workers' compensation policy, Texas law would still require an affirmative allegation of Empire's negligence in the pleadings, as discussed above. *Pine Oak Builders*, 279 S.W.3d at 655-56. Thus, the district court erred in granting summary judgment in favor of Gilbane on the duty to defend.

## V. The Duty to Indemnify.

Next, we consider whether Admiral owes a duty to indemnify under the CGL policy. The duty to indemnify is separate and distinct from the duty to defend. *Zurich Am. Ins. Co.*, 268 S.W.3d at 490-91. The duty to defend is circumscribed by the eight-corners doctrine; the duty to indemnify, on the other hand, is controlled by the facts proven in the underlying suit. *Pine Oak Builders*, 279 S.W.3d at 656. Accordingly, we consider facts outside of those alleged in the petition in determining the duty to indemnify. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 334 S.W.3d 217, 219 (Tex. 2011). Here, if the facts proven at trial establish "liability for 'bodily injury' . . . caused, in whole or in part, by . . . [Empire's] acts or omissions; or . . . [t]he acts or omissions of those acting on [Empire's] behalf," then Admiral owed a duty to indemnify.

The district court found that Parr was injured when he slipped while descending a ladder carrying an extension cord. He told a co-worker immediately after he fell that his "feet got wrapped up in the extension cord." The district court concluded that "Parr's own conduct was a contributing proximate cause of his damages claimed in the Underlying Lawsuit" and that "[a] jury in the Underlying Lawsuit would have found Michael Parr or his employer, Empire Steel, 1% or more responsible for causing the occurrence and/or injuries at issue." Thus, under the terms of the policy, the district court concluded that Admiral had a duty to indemnify Gilbane.

Admiral does not argue that the district court erred in making those findings. Rather, it argues only that there was no duty to indemnify Gilbane because the TCA is not an insured contract, and Gilbane therefore does not

qualify as an additional insured. As explained above, *supra* Part IV.A., Gilbane does qualify as an additional insured. Therefore, the district court did not clearly err in determining that Admiral owes Gilbane a duty to indemnify for the cost of its settlement with Parr.[4]

## VI. Conclusion.

Accordingly, we REVERSE the summary judgment on the duty to defend and AFFIRM the judgment on the duty to indemnify. We remand for proceedings consistent with this opinion.

---

[4] Although this may seem like an unusual result, where there is no duty to defend but the narrower duty to indemnify is triggered, the Texas Supreme Court has considered just this situation. In *D.R. Horton-Tex.*, 300 S.W.3d at 744, the insurance company argued that it could not have a duty to indemnify if the facts alleged in the underlying pleadings did not trigger the duty to defend. *Id.* The Texas Supreme Court rejected that argument, holding that it is possible to prove facts at trial that give rise to a duty to indemnify even when those same facts were not sufficiently pleaded to trigger the duty to defend. *Id.*