PRISCILLA R. OWEN, Circuit Judge,
dissenting.
All agree that U.S. United Ocean Services, L.L.C. (United) is an additional insured under the general marine liability policy issued by St. Paul Fire & Marine Insurance Company (St. Paul). Because the majority opinion concludes that the *276 Watercraft Exclusion denies coverage to United, I respectfully dissent.
United is an additional insured under the policy that Buck Kreihs obtained from St. Paul. The majority opinion holds, however, that the policy’s Watercraft Exclusion excludes the claims that the Holdens asserted against United. I respectfully disagree.
The policy contains a “Blanket Additional Insured Endorsement” which amended the policy “to include as an additional insured ... any person or organization whom the Named Insured is required to add as an additional insured of this policy under ... [a] written contract.” St. Paul agrees that United was an additional insured under this endorsement. St. Paul also agrees that United was insured under the “Bodily Injury and Property Damage” section of the policy, which provides that “[t]he Company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of: ‘Bodily Injury’ ‘Property Damage’ to which this insurance applies.” United was legally obligated to pay the Holdens. The only argument St. Paul asserts with regard to United’s status as an additional insured is that the Watercraft Exclusion excludes coverage.
The Watercraft Exclusion provides:
SECTION II: GENERAL LIABILITY COVERAGES
Coverage A: Bodily Injury and Property Damage
2. Exclusions:
This insurance does not apply to:
(5) Watercraft
“Bodily injury” or “property damage” arising out of the ownership or operation of any watercraft:
(a) Owned by an insured;
(b) Chartered, leased, rented, or loaned to an insured.
This exclusion does not apply to:
(c) Liability assumed under an “insured contract”, but only that portion of the “insured contract” under which the “Named Insured” assumes the tort liability of another party for “bodily injury” or “property damage” to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
Whether the Watercraft Exclusion applies turns on the interpretation of the exception to the exclusion. The question is whether United’s liability to the Holdens was “Liability assumed under ... that portion of the ‘insured contract’ under which the “Named Insured” [Buck Kreihs] assumes the tort liability of another party [United].” The district court reasoned that because Buck Kreihs’s assumption of United’s liability was void under the LHWCA, “Buck Kreihs has not assumed the tort liability of [United] concerning Holden’s alleged injuries.” That reasoning is contrary to decisions of our court.
In Mid-Continent Casualty Co. v. Swift Energy Co.,[1] Air Equipment, a contractor, agreed to indemnify Swift, the operator of an oil drilling site. This indemnity agreement was alleged to be unenforceable under the Texas Oilfield Anti-Indemnity Act.[2] An insurer, Mid- *277 Continent, had issued a policy to Air Equipment and argued that Swift was not entitled to coverage. One of the arguments Mid-Continent made was that the agreement between Air Equipment and Swift was not an “insured contract” under the policy.[3] Mid-Continent contended that “if the indemnity provisions of the [agreement between Air Equipment and Swift] are unenforceable, Mid-Continent never actually assumed Swift’s liabilities” and therefore, the indemnity agreement would not qualify as an insured contract.[4] St. Paul’s argument in the present case that Buck Kreihs never assumed United’s liabilities is indistinguishable. We rejected the argument in Swift, concluding that even were the indemnity agreement invalid under the Texas law, it qualified as an “insured contract.”[5]
In Gilbane Building Co. v. Admiral Insurance Co.,[6] this court also examined policy language similar to that contained in St. Paul’s policy. In Gilbane, a general contractor (Gilbane) entered into an agreement with a subcontractor (Empire Steel) under which Empire Steel agreed to indemnify Gilbane and to add Gilbane as an additional insured under its commercial general liability policy.[7] When an employee of Empire Steel was injured, he sued Gilbane, and Gilbane sought coverage as an additional insured from Empire Steel’s insurer.[8] The policy “provide[d] coverage to additional insureds ... so long as Empire Steel had previously assumed the liability of the potential additional insured in a written contract.”[9] The policy provided that a party was an additional insured if coverage was required by an “insured contract,” and the policy defined an “insured contract” as one in which “the named insured assume[d] the tort liability of the additional insured.”[10] In addressing whether Gilbane qualified as an additional insured, we were required to determine whether Empire Steel assumed the tort liability of Gilbane.[11]
The insurer argued that there was no assumption of liability because the indemnity provision in the contract between Empire Steel and Gilbane was unenforceable under Texas law.[12] We held that the question was not whether the assumption of liability was enforceable but rather whether Empire Steel had agreed to assume Gilbane’s tort liability.[13] Because Empire Steel had agreed not only to indemnify Gilbane but also to secure insurance on behalf of Gilbane, we held that Empire *278 Steel had agreed to assume Gilbane’s tort liability.[14] Gilbane therefore qualified as an additional insured.[15]
The majority opinion’s attempt to distinguish Gilbane and Swift is unpersuasive. Although the majority opinion says that it is relying on “Named Insured” language in the exception to the Watercraft Exclusion, the majority opinion is in reality giving effect to arguments regarding the meaning of an “insured contract” and the assumption by a named insured of the tort liability of additional insureds that we rejected in Gilbane and Swift. The majority opinion states that because the policy uses the term “Named Insured,” the exception to the Watercraft Exclusion limits its scope to claims made by Buck Kreihs under the policy and thus the exception cannot apply to United. This entirely ignores the language in the exception to the Watercraft Exclusion regarding the Named Insured’s assumption of the tort liability of another party, in this case United, for bodily injury.
Buck Kreihs assumed the liability of United under an “insured contract.” It was United’s tort liability to those such as the Holdens that the insurance policy’s additional insured provisions were drafted to cover. The exception to the Watercraft Exclusion was designed to make clear that the Watercraft Exclusion did not negate coverage for an additional insured. The exception to the Watercraft Exclusion focuses on “[ljiability assumed under an ‘insured contract’, but only that portion of the ‘insured contract’ under which the ‘Named Insured’ assumes the tort liability of another party for ‘bodily injury’ or ‘property damage’ to a third person or organization.” The “portion of the ‘insured contract’ under which the ‘Named Insured’ [Buck Kreihs] assume[d] the tort liability of another party” was the portion of the indemnity agreement under which Buck Kreihs assumed the liability of United to Buck Kreihs’s employees. It is that “[ljiability,” namely, United’s liability that Buck Kreihs, the Named Insured, assumed, and to which the exception to the exclusion applies. The fact that Buck Kreihs’s assumption of liability is unenforceable does not mean that the exception to the exclusion ceases to apply to United’s liability.
The meaning of the policy is clear when the indemnity obligations of the Named Insured are enforceable. The Watercraft Exclusion in the policy excludes “ ‘bodily injury’ ... arising out of the ownership or operation of any watercraft ... [o]wned by an insured.” Paul Holden’s bodily injury arose out of the ownership or operation of a watercraft owned by United, “an insured” under the policy. If the policy said nothing further, United’s liability for Holden’s injuries would be excluded. However, there is an exception to this exclusion. The Watercraft Exclusion does not apply to “[ljiability assumed under an ‘insured contract’, but only that portion of the ‘insured contract’ under which the ‘Named Insured’ assumes the tort liability of another party for ‘bodily injur/ or ‘property damage’ to a third person or organization.” The Named Insured, Buck Kreihs, assumed the additional insured’s (United’s) liability under the portion of the indemnity agreement in which Buck Kreihs assumed United’s tort liability to Buck Kreihs’s employees. Therefore, if the indemnity agreement were enforceable, United’s lia *279 bility — which was “[‘¡liability assumed under an ‘insured contract’ ” by the Named Insured — would not be excluded by the Watercraft Exclusion. It is the liability of “another party,” including the liability of an additional insured, not Buck Kreihs’s own tort liability, that is excepted from the Watercraft Exclusion. The majority opinion’s reasoning fails to comprehend this. The fact that the Named Insured’s assumption of an additional insured’s liability is unenforceable does not change the meaning of the exception to the Watercraft Exclusion. The majority opinion fails to give meaning to the precise terms of the policy.
Had St. Paul wanted to condition application of the insured-contract exception on the validity of the assumption of liability by the Named Insured, it could have explicitly said so in the policy.[16] Construing the policy in favor of coverage for United is consistent with Louisiana contract law, which provides that “[e]xclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured.” [17] As to policy exclusions under Louisiana law, “[t]he insurer has the burden of proving that a loss comes within a policy exclusion.”[18]
Under Louisiana law, “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”[19] The majority opinion’s interpretation of the exception adds a limitation that is not supported by the language of the exception. The Watercraft Exclusion should not apply, and United’s claims should be covered under the policy.
For the foregoing reasons, I respectfully dissent. I would reverse the judgment of the district court.

. 206 F.3d 487, 490 (5th Cir.2000).

. Tex Civ. Prac. & Rem.Code Ann. §§ 127.001-.007.

. Swift, 206 F.3d at 492; see also id. (explaining that the policy in question defined "insured contract” to include, " ‘That part of any contract or agreement pertaining to your business ... under which you [Air Equipment] assume the tort liability of another party to pay for ‘bodily injury’ or 'property damage' to a third person or organization.’ ”) (alterations in original).

. Id. at 493.

. Id. (“In light of the rule that ambiguous policy language is interpreted to find coverage ..., the lack of relevant precedent and the existence of strong opposing arguments appear to dispose of Mid-Continent’s argument that the MSA is not an ‘insured contract,' even if we grant the assumption that the MSA’s indemnity provisions are invalid under the TOAIA.”).

. 664 F.3d 589 (5th Cir.2011).

. Gilbane, 664 F.3d at 592-93.

. Id. at 592.

. Id. at 593.

. Id. at 594 (internal quotation marks omitted).

. Id. at 594-95.

. Id. at 595.

. Id. at 596.

. Id. ("Empire Steel contracted not only to indemnify Gilbane, but also to secure insurance on its behalf; by doing so, it agreed to assume Gilbane's tort liability. That provision is not rendered void by the indemnity provision, even if it is unenforceable.”).

. Id.

. See LeBlanc v. Global Marine Drilling Co., 193 F.3d 873, 875 (5th Cir. 1999) ("If the parties had determined to condition ... assured status upon the legal enforceability of the indemnity agreement, they very easily could have done so.”).

. Garcia v. St. Bernard Parish Sch. Bd., 576 So.2d 975, 976 (La.1991) (citing Capital Bank & Trust v. Equitable Life Assurance Soc’y, 542 So.2d 494 (La.1989); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953)).

. La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1252 (La.1993) (citing Capital Bank, 542 So.2d at 494; Lado v. First Nat'l Life Ins. Co., 182 La. 726, 162 So. 579 (1935)).

. La. Civ.Code Ann. art.2046 (2008).