# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41625

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2017

Lyle W. Cayce
Clerk

LONGHORN GASKET AND SUPPLY COMPANY; ET AL,

Plaintiffs

TRINITY LLOYD'S INSURANCE COMPANY; TRINITY UNIVERSAL INSURANCE COMPANY,

Intervenor Plaintiffs - Appellees Cross-Appellants

v.

UNITED STATES FIRE INSURANCE COMPANY,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 2:07-CV-399

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

This case involves two insurance companies debating coverage for various asbestos-related claims. Because we conclude that the pollution exclusion contained within the defendant's excess policies applies, we VACATE

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the district court's judgement. We REMAND to the district court for a determination of the applicability of the "sudden and accidental" exception to the pollution exclusion.

## I.

Longhorn Gasket and Supply Company, et al. ("LGS") manufactured and sold gaskets throughout the 1980s and 1990s, some of which contained asbestos. As a result, LGS has been the defendant in numerous asbestos and mixed dust cases in Texas regarding damage that occurred over many years—including years in which intervenors Trinity Lloyd's Insurance Company and Trinity Universal Insurance Company ("Trinity") provided primary comprehensive general liability insurance policies. This case concerns LGS's primary and excess policy coverage, as provided by Trinity and United States Fire Insurance Company ("U.S. Fire"), between May 21, 1983 and February 1, 1986.

Trinity's primary policies and U.S. Fire's excess policies overlapped from May 21, 1983 through February 1, 1986. Trinity's primary insurance policies were effective May 21, 1983 through May 21, 1988, and each had an annual limit of $500,000 per occurrence and in the aggregate. U.S. Fire's excess policies at issue were effective February 1, 1983 through February 1, 1986, and had policy limits of $5 million.

On September 12, 2007, LGS sued U.S. Fire, alleging breach of contract and insurance code violations for U.S. Fire's alleged refusal to acknowledge the applicability of coverage, to provide settlement authority, to negotiate, and to eliminate LGS's exposure in the outstanding asbestos lawsuits. Dkt. No. 1 at 4. LGS also sought a declaratory judgment that U.S. Fire's excess policies were activated, enforceable, and applicable to the claims being made against LGS in the asbestos lawsuits. *Id.*

No. 15-41625

Trinity filed an unopposed motion to intervene in November 2008, alleging that its policies from 1983–1988 were exhausted and that as a result, U.S. Fire was obligated to indemnify and defend the claims against LGS during the time when U.S. Fire provided excess policies. Trinity contends it has paid a total of $2,432,556.44 in indemnity payments to asbestos claimants on LGS's behalf, and that it has expended another $3,171,028.61 defending LGS against asbestos claims. Trinity sought reimbursement for all of the defense and indemnity payments it made on behalf of LGS under the theory that, once its 1980–1983 policies[1] were exhausted, U.S. Fire was obligated to defend and indemnify LGS from the claims that Trinity defended and settled.

All parties moved for summary judgment, and these motions were granted in part and denied in part in an initial order and an order on a Motion for Clarification and Reconsideration in May 2011. In June 2011, LGS filed its second and Trinity filed its second and third motions for partial summary judgment. U.S. Fire filed a motion for summary judgment based on the policies' pollution exclusion. The district court denied U.S. Fire's motion in March 2012, saying first that asbestos was not a pollutant, and therefore the pollution exclusion did not apply to the underlying claims. In the alternative, the district court held that a fact issue existed regarding the sudden and accidental exception, making summary judgment improper.

The case was immediately stayed and administratively closed for an interlocutory appeal, which this court denied in May 2012. After this denial, LGS's second motion for partial summary judgment was reinstated upon motion in September 2013. Trinity's second and third motions for summary judgment were reinstated upon motion in April 2014.

---

[1] These policies were technically provided by ACE, an earlier iteration of Trinity.

3

No. 15-41625

In October 2014, the district court appointed a special master, who prepared a report and recommendation on these motions for partial summary judgment in March 2015. After this report, Trinity filed its fourth motion for partial summary judgment, and U.S. Fire filed a cross-motion for partial summary judgment. In June 2015, LGS and U.S. Fire settled, LGS dismissed its claims with prejudice, and was removed from the lawsuit altogether.

The district court ordered the special master to file a second report and recommendation, which was filed in August 2015 and adopted in October 2015. Before the court were Trinity's fourth motion for partial summary judgment and U.S. Fire's cross-motion, U.S. Fire's motion for partial summary judgment on subrogation, and responses and objections to each. The special master recommended granting in part and denying in part Trinity's motion and U.S. Fire's cross-motion for partial summary judgment, denying U.S. Fire's motion on subrogation, and overruling certain objections.

The special master's report and recommendation reiterated the following: the cause of the injuries in the underlying claims was exposure to LGS's gaskets with asbestos, LGS did not have to horizontally exhaust its primary coverage, and U.S. Fire's excess policies were triggered upon exhaustion of any of the underlying primary policies for the same policy period, that exposure to asbestos constituted injury-in-fact (thus triggering coverage under Texas law), and that all claimants exposed "at the same time and location" constituted one "occurrence." The report addressed the parties' arguments regarding settlement payments, defense costs, and equitable subrogation. As a result, the district court determined that Trinity was entitled to $903,638.52 in settlement payments and $1,564,334.47 in defense costs from U.S. Fire.

The district court denied U.S. Fire's motion for reconsideration and U.S. Fire appealed. The district court then entered a final judgment, adopting the

No. 15-41625

report and recommendation, after which U.S. Fire timely amended its notice of appeal. On April 5, 2016, the district court granted Trinity's Bill of Costs and ordered that U.S. Fire pay all taxable costs, which U.S. Fire has also appealed.

U.S. Fire now appeals the final judgment as well as several of the district court's rulings. On appeal, U.S. Fire has presented many arguments as to why its excess policies are not triggered and why it should not have to pay anything. It argues that: (1) horizontal, rather than vertical, exhaustion of the primary policies must occur before U.S. Fire's excess policies are triggered; (2) in the alternative, even under vertical exhaustion, U.S. Fire is entitled to subrogation from Trinity; (3) the policies were never triggered because injury-in-fact cannot be determined; (4) the policies were never triggered because there is insufficient proof that the claimants were exposed to asbestos during the relevant time; (5) the district court should not have awarded Trinity costs; (6) the excess policies' pollution exclusion bars asbestos claims; or (7) in the alternative, Trinity has failed to demonstrate a fact issue as to the applicability of the "sudden and accidental" exception to the pollution exclusion.

Trinity, for its part, argues the opposite in favor of its position that U.S. Fire must provide indemnification for the underlying asbestos claims. It argues that: (1) the district court properly applied vertical exhaustion, exhausting policy coverage by year rather than by type, which would implicate U.S. Fire's excess policies; (2) U.S. Fire is not entitled to subrogation; (3) the district court correctly determined that the injury-in-fact trigger was "exposure" to asbestos, thereby triggering U.S. Fire's excess policies; (4) there was sufficient evidence that claimants were exposed to asbestos during the relevant time; (5) the district court properly awarded Trinity costs; (6) the district court properly concluded that the pollution exclusion did not apply; or (7) in the alternative, the pollution exclusion does not apply to product liability claims; or (8) as a

second alternative, the district court properly concluded Trinity had raised a genuine issue of material fact on the applicability of the "sudden and accidental" exception.

Although the parties both start with the exhaustion theory as the threshold inquiry as to whether U.S. Fire's excess policies are triggered, we start with the pollution exclusion clause. If the district court is mistaken and the pollution exclusion *does* apply, then by its own policy terms, U.S. Fire's excess policy would not cover the underlying claims. If, however, the "sudden and accidental" exception to the pollution exclusion applies, the policy may be implicated according to horizontal or vertical exhaustion—or one of the other theories.

## II.

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied," viewing the evidence in the light most favorable to the nonmoving party. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011). We affirm "only if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law." *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007).

"In this diversity action, we must apply Texas law as interpreted by Texas state courts." *Gilbane*, 664 F.3d at 593 (quoting *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). We "are bound by our own precedent interpreting Texas law unless there has been an intervening change in authority." *Id.* at 594 (quoting *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979)). Under Texas law, an insurer may have two separate and distinct responsibilities relating to coverage: the duty to defend and the duty to indemnify. *Id.*; *see also D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). An insurer's duty to defend is

governed by the "eight-corners rule," which limits a court's review to the insurance policy and the third-party plaintiff's pleadings in the underlying litigation. *Gilbane*, 664 F.3d at 594. Texas courts construe the language according to "the ordinary, everyday meaning of the words to the general public." *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 607 (Tex. 2008).

The duty to indemnify, however, depends "on the facts and circumstances of the alleged injury-causing event," and parties may "introduce evidence during coverage litigation to establish or refute the duty to indemnify." *D.R. Horton–Tex.*, 300 S.W.3d at 741. The factual allegations, not the legal theories, control. *See id.* at 744. The pleadings are construed liberally, with any doubts construed in favor of the insured. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). However, the "facts actually established in the underlying suit control the duty to indemnify." *D.R. Horton-Tex.*, 300 S.W.3d at 744. Thus, the "duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *Id.*

If the insured meets his burden and proves coverage, the insurer is liable unless he can prove the loss is within an exclusion. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion can bring the claim back within coverage. *Id.* "If an insurance contract uses unambiguous language, [a court] must enforce it as written." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). If, however, a contract is susceptible to more than one reasonable interpretation, a court will resolve any ambiguity in favor of coverage. *Id.* "Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning." *Id.* "No one phrase, sentence, or section of the policy should

No. 15-41625

be isolated from its setting and considered apart from the other provisions." *Id.*
In addition, a court "must give the policy's words their plain meaning, without
inserting additional provisions into the contract." *Id.*

### III.

The district court determined that the pollution exclusion did not apply
for two reasons. First, it "decline[d] to find that asbestos is a pollutant subject
to the pollution exclusion" because U.S. Fire "has not cited and the [district
c]ourt has not found any cases where asbestos is considered a 'pollutant' and
subject to the pollution exclusion in an umbrella policy." Alternatively, the
district court determined that "even if asbestos is a pollutant and the pollution
exclusion applies to the [u]nderlying [c]laims, there still remains a question of
material fact with respect to the 'sudden and accidental' exception to the
pollution exclusion," which would make a grant of summary judgment to U.S.
Fire improper.

### A.

In relevant part, the U.S. Fire excess policies each contain the following
pollution exclusion:

> The Policy shall not apply:
> . . .
> under [coverage for bodily injury liability or property damage
> liability] to liability arising out of the discharge, dispersal, release
> or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic
> chemicals, liquids or gases, waste materials or other irritants,
> contaminants or pollutants into or upon land, the atmosphere or
> any water course or body of water; but this exclusion does not apply
> if such discharge, dispersal, release or escape is sudden and
> accidental . . . .

According to the plain language of U.S. Fire's excess policy, the pollution
exclusion bars claims for the following: (1) a bodily injury or property damage
liability claim; (2) arising out of the discharge, dispersal, release, or escape into
or upon the land, the atmosphere or any water course or body of water; (3) of

8

smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants. The order of burden shifting is as follows: if Trinity pleaded facts showing coverage, then the burden shifts to U.S. Fire to show that the pollution exclusion applied to the underlying claims. *Gilbert*, 327 S.W.3d at 124. If U.S. Fire shows the pollution exclusion applied to the underlying claims, then the burden shifts to Trinity to prove that an exception to the exclusion covers the claims. *Id.*

The parties' arguments focus on the third prong: whether asbestos is a pollutant.[2] U.S. Fire emphasizes that asbestos is a pollutant, specifically one that must first be released into the air to cause the injuries alleged in the underlying claims.[3] Trinity replies that asbestos is not a pollutant. We address each argument in turn.

Neither this court nor the Texas Supreme Court has ever determined whether asbestos is a pollutant. Thus, we start with the plain language of the

---

[2] After oral argument, Trinity raised a new argument that the asbestos was not released into the "atmosphere," and thus fell outside the pollution exclusion. Trinity raised this issue for the first time in its supplemental letter brief. The "failure to raise *specific issues or arguments* . . . operates as a waiver of those issues or arguments for appeal." *United States v. Scroggins*, 599 F.3d 433, 448 (5th Cir. 2010). Further, Trinity's cited case does not limit "atmosphere" to an outdoor context, but instead distinguishes the terms "workplace" and "environment." *See Cooper Indus., LLC v. Precision Castparts Corp.*, No. H-15-0576, 2016 WL 4939565, at *8 (S.D. Tex. Sept. 14, 2016) (unpublished). Indeed, the clause at issue in that case, as U.S. Fire noted, did not even contain the word "atmosphere," let alone conclusively define it. *Id.* at *13.

[3] Trinity risks pleading itself out of its main claims on this point. Trinity argues that U.S. Fire cannot refer to the underlying claims because they are outside of the "eight corners" rule and that there "is *no allegation of or evidence* that the movement of asbestos fibers from LGS's product constituted 'discharge, dispersal, release, or escape of . . . irritants, contaminants, or pollutants into or upon the land, the atmosphere or any water course or body of water,' required by U.S. Fire's policy." (emphasis added). U.S. Fire points out that in attempting to avoid the pollution exclusion, Trinity has undermined its exposure argument— in other words, if there is no allegation or evidence that asbestos from LGS products constituted discharge of pollutants into the atmosphere, then there is no proof that any plaintiff was exposed to or injured by any LGS product at any time. U.S. Fire also notes that Trinity itself asked the court to accept its characterization of the underlying claims rather than relying on those claims' pleadings.

policy. U.S. Fire argues that asbestos falls within the plain meaning of the policy terms because it is an "irritant," "contaminant" or "pollutant." Specifically, U.S. Fire argues that asbestos irritates the lungs and contaminates the atmosphere and body. We interpret this policy language according to "the ordinary, everyday meaning of the words to the general public," *Goudeau*, 272 S.W.3d at 607. We agree with U.S. Fire that asbestos is both an irritant and a pollutant.

An "irritant" is anything "causing irritation; esp. physical irritation." *Irritant*, The American Heritage Dictionary, 2d. College Ed.[4] A "contaminant" is "[s]omething that contaminates;" to contaminate is "to make impure or corrupt by contact or mixture." *Conaminant, Contaminate*, The American Heritage Dictionary, 2d. College Ed. Similarly, a "pollutant" is "[s]omething that pollutes, esp. a waste material that contaminates air, soil, or water." *Pollutant*, The American Heritage Dictionary, 2d. College Ed.

The caselaw is varied on this issue, but seems to slightly favor treating asbestos as a pollutant, particularly when the pollution exclusion lists "irritant, contaminant, or pollutant." *See* 3 Allan D. Windt, *Insurance Claims & Disputes* § 11:11 (6th ed.) (noting the "inconsistent manner in which courts have handled the question of whether even asbestos is a pollutant for the purpose of a pollution exclusion" and noting five cases in which courts have found asbestos to be a pollutant and four in which it was not). Many jurisdictions have classified asbestos as a pollutant under a pollution exclusion. *See, e.g., Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 953 F.2d 1387, 1992 WL 16749, at *1 (9th Cir. 1992) (unpublished)

---

[4] Indeed, we have previously used a similar definition of "irritant" to interpret "plain language" in an insurance policy. *See Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455–56 & n.3 (5th Cir. 2009) (defining "irritant" as "an agent by which irritation is produced (a chemical)" (quoting Webster's Third New Int'l Dict. Unabridged 1197 (1981))).

("[A]sbestos is a pollutant as defined by the policy because it is a solid irritant."); *Bd. of Regents  v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 893–94 (Minn. 1994) ("[T]he policy exclusion in the excess policies includes—and therefore excludes from policy coverage—the contamination or pollution by asbestos fibers of air within a building."); *Am. States Ins. Co. v. Zippro Constr. Co.*, 455 S.E.2d 133, 135 (Ga. Ct. App. 1995) ("There is little question that asbestos constitutes a pollutant as unambiguously defined in the exclusion."); *see also* 29 C.F.R. §§ 1910.1000, 1001 (defining asbestos in many forms as an air contaminant).

Some jurisdictions, however, when interpreting New York law, have determined that asbestos is not a pollutant—often combining this conclusion with an analysis of terms "atmosphere" or "environment." The Southern District of New York determined that a "special limit endorsement, negotiated by the parties, [that] is unique to the[ir] policies and no case has interpreted" was "ambiguous at least with regard to asbestos" and "nothing in the provision suggests that asbestos falls within its terms" because one "would not usually associate asbestos with the substances listed in the exclusion, namely, smoke, fumes, or waste." *See Maryland Casualty Co. v. W.R. Grace & Co.*, 794 F. Supp. 1206, 1229 (S.D.N.Y. 1991), *rev'd on other grounds*, 23 F.3d 617 (2d Cir. 1993) ("Whatever the applicability of the *usual* pollution clause, we cannot find, as a matter of law, that the *special limits* provision applies to asbestos." (emphasis added)). Relying on New York state and federal cases, the Ohio Court of Common Pleas determined that asbestos is not associated with substances like "smoke, fumes, or waste," and determined that the pollution exclusion was "aimed at the release of toxic waste causing environmental damage." *Owens-Corning Fiberglas Corp. v. Allstate Ins. Co.*, 660 N.E.2d 746, 751–52 (Ohio Misc. 1993).

No. 15-41625

The Ohio Court of Appeals, however, has held the opposite, determining in an unpublished opinion that asbestos released during the sanding of a vinyl kitchen floor was an "irritant or contaminant" and therefore a pollutant because it was classified as a "hazardous substance," "toxic pollutant," or "hazardous air pollutant" under federal law, and was properly characterized as waste. *See Selm v. Am. States Ins. Co.*, No. C-010057, 2001 WL 1103509, at *3 (Ohio Ct. App. 1st Dist. Hamilton Cty. 2001).

The pollution exclusion in U.S. Fire's excess policies is broad, and applies generally to "irritants, contaminants, and pollutants." Though the case law is mixed, we conclude, under the plain language of the policy exclusion, that asbestos constitutes a pollutant and an irritant.[5] Accordingly, the underlying claims fall under the pollution exclusion because they: (1) were for bodily injury; (2) arose out of the discharge, dispersal, release, or escape, into the atmosphere; (3) and originated with an irritant and pollutant—namely, asbestos.

**B.**

We have concluded that the pollution exclusion applies, and so the burden shifts to Trinity to attempt to apply an exception to the exclusion. U.S. Fire's pollution exclusion states that it "does not apply if such discharge, dispersal, release or escape is sudden and accidental." Trinity argues that the "sudden and accidental" exception applies, thus negating any effect the pollution exclusion would have on coverage.

We do not reach this issue here. Rather, because we have concluded that asbestos is encompassed within the pollution exclusion in U.S. Fire's excess

---

[5] Trinity also argues that the underlying claims are barred because they relate to products liability, which is not covered by pollution exclusions. As U.S. Fire notes, however, there is no "products liability" language in the exclusion, nor does the exclusion single out "environmental" damages as separate from "products" damages.

No. 15-41625

policies, we will remand for the district court to determine in the first instance the applicability of the sudden and accidental exception to the pollution exclusion.

## IV.

Accordingly, we VACATE the district court's judgment and REMAND for a determination as to the applicability of the sudden and accidental exception.[6]

---

[6] Because we are remanding for a decision on the applicability of the sudden and accidental exception, we do not address the remaining issues asserted on appeal. The appeal from the district court's award of costs is moot. The remaining issues are not dispositive on this record.